Joe ROSS, Appellant,

v.

STATE of Alaska, Appellee.

No. 3429.

Supreme Court of Alaska.

Nov. 17, 1978.

Mark E. Ashburn, Asst. Public Defender, Fairbanks, Brian Shortell, Public Defender, Anchorage, for appellant.

Thomas M. Jahnke, Asst. Dist. Atty., Fairbanks, and Harry L. Davis, Dist. Atty., Fairbanks and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

MATTHEWS, Justice.

The appellant, Joe Ross, was convicted after a court trial before the Superior Court in Fairbanks and was sentenced to a term of five years for possession of heroin. He contends on appeal that the evidence was insufficient to support a finding of guilt.

On June 24, 1976, a warrant for a premises search was served at a residence with the address 623 17th Avenue, Fairbanks. The police conducted a thorough search and seized all narcotics and related paraphernalia in the residence at that time. On August 12, 1976, a second premises warrant was served at that address, and approximately thirty grams of heroin and a considerable amount of narcotics paraphernalia was seized, evidence which ultimately led to Ross's conviction.[1]

At trial, there was uncontroverted testimony that Ross had lived at the residence continuously from at least the time of the first search until the time of the second search on August 12th. There was also testimony that in addition to Ross, several heroin addicts were regular visitors at the residence, and that at least one of them had perhaps resided in the house for an indeterminate period of time.

Further testimony indicated that at the time the police knocked on the door of the residence on August 12, 1976, the appellant was asleep on a couch in the living room, and that one Pamela Wipf, who had just arrived at the house, was in the kitchen. Ms. Wipf answered the door a few seconds after the police officers' knock, whereupon an officer rapidly went through the door, entered the living room, and observed the appellant standing a foot or two in front of the couch. Ross was immediately subjected to a pat-down search, and was arrested on another charge. A search of the house was then conducted, and a plastic bag containing the thirty grams of heroin was discovered when an officer turned over the couch. The bag was behind the couch, lying close to the wall near the end of the couch closest to the doorway through which the police had entered. It evidently would have been visible to a person standing next to a closet door located between the end of the couch and the entrance to the house, even before the couch had been turned over.

On the basis of the above testimony, the trial judge concluded first that the frequent visitations of the house by heroin addicts and the abundance of narcotics paraphernalia found there supported an inference that Ross was involved in, or at least had knowledge of, narcotics activity in the house. The judge further concluded that it was inherently unreasonable to believe that someone would leave a sizeable cache of heroin[2] unattended and only partially concealed in a house frequented by heroin addicts, and that therefore the narcotics must have belonged to one of the two people in the house at that time. Of the two, the judge found it unreasonable to believe that Ms. Wipf would have carried the heroin from the kitchen into the living room in order to conceal it in a location that was only a few feet from where the police were knocking on the door, and that it was much more likely that Ross, who lived in the house and who was much closer to the heroin, was in actual possession and control of the drug.

We affirm the conviction. Under the standard of review set down by this court in *Beck v. State*, 408 P.2d 996, 997 (Alaska

---

1. The heroin was contained in a prophylactic, four plastic "slips", and eleven balloons, all of which were found together in a plastic "baggie". The paraphernalia consisted of a number of syringes, balloons, and spoons which had apparently been used for melting heroin. Of all the evidence, only the substance in the prophylactic was checked for actual heroin content. It was found to contain heroin in a concentration of approximately 2.7 percent.

2. The retail value of the heroin was estimated at between two and three thousand dollars.

1965), and the cases following,[3] the evidence is to be viewed in the light most favorable to the state. The question, then, is whether there is adequate relevant evidence to support a conclusion by a reasonable mind that there was no reasonable doubt as to Ross's guilt. After carefully reviewing the record, we find that the evidence was sufficient to support the Superior Court's finding.

The conviction is AFFIRMED.

---

**3.** This standard of review has frequently been reiterated, most recently in *McKinney v. State*, 566 P.2d 653, 659 (Alaska 1977); *Alto v. State*, 565 P.2d 492, 498 (Alaska 1977); *Buchanan v. State*, 561 P.2d 1197, 1207 (Alaska 1977); and *Noble v. State*, 552 P.2d 142, 144 (Alaska 1976).