**Robert STEVENS Jr., Appellant,**

v.

**MATANUSKA–SUSITNA BOROUGH, Appellee.**

**Nos. A–9134, A–9391.**

Court of Appeals of Alaska.

June 23, 2006.

Rehearing Denied July 28, 2006.

---

**6.** Alaska R. Civ. P. 79(f)(15).

Chadwick P. McGrady, Law Office of Chadwick McGrady, P.C., Palmer, for Appellant.

Nicholas Spiropoulos, Assistant Borough Attorney, and Teresa S. Williams, Borough Attorney, Palmer, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

This case involves a noise ordinance enacted by the Matanuska–Susitna Borough in May 2004 after homeowners complained that their sleep was being disturbed by amplified music coming from the Fish Heads Bar and Grill on the Palmer–Wasilla Highway. Robert Stevens Jr. owns that business, which abuts a residential subdivision.

Shortly after the ordinance was enacted, Stevens was cited twice for violating it. He was convicted of those violations in October 2004. Within a week of those convictions, he was cited five more times. A trial on those additional charges was held in August 2005, and Stevens was convicted of two more violations. Stevens has appealed his convictions in both cases. We have consolidated his appeals for purposes of this decision.

In general terms, the noise ordinance at issue forbids amplified noise or vibration during certain hours of the day and night that can be plainly heard or felt on neighboring property such that it disturbs a person of normal sensibilities. Stevens has asked us to invalidate the ordinance. He argues that the language of the ordinance is so vague that it fails to give constitutionally adequate notice of what conduct is prohibited and so overbroad that it chills free speech. He also argues that the Matanuska–Susitna Borough has no authority to regulate noise.

For the reasons explained below, we conclude that the noise ordinance survives Stevens's constitutional challenges. We also conclude that Stevens has not met his burden to show that the Borough exceeded its statutory authority in enacting the ordinance. We therefore affirm Stevens's convictions.

*Facts and proceedings*

Stevens was cited for violating the Borough's noise ordinance, MSB 8.52, on Saturday May 22, 2004, at about 1:22 a.m. and on Sunday May 23, 2004, at about 2:30 a.m. based on evidence that his neighbors were disturbed in their homes by the sound of amplified bass music emanating from the Fish Heads Bar and Grill.

On October 8, 2004, a bench trial was held in district court before Superior Court Judge William H. Fuld. At that trial, the Borough presented testimony by Brian Archer, a private investigator it had hired to do sound surveillance of the Fish Heads bar. Archer testified that on May 22, from 1:14 a.m. to 2:26 a.m., he stood about 150 yards from the Fish Heads bar, in the adjacent residential subdivision. He said that from that location the "whomp, whomp" sound of amplified bass music was "fairly consistent throughout that

hour." Archer said he returned to the subdivision on May 23 from 2:15 a.m. to 3:15 a.m. and heard the same bass sound, with only occasional two-minute gaps in the sound. He said he was "absolutely positive" the sound came from the Fish Heads bar. However, on cross-examination, he conceded that his tape recorder had not picked up the bass sound, only the rustling of trees and other neighborhood noises.

Two homeowners in the subdivision testified. Tara Gibbs said that while in her home on May 22–23 from 11:00 p.m. until 1:30 a.m., when she fell asleep, she heard a continuous "thumping" noise from the Fish Heads bar. She said that similar noises had affected her sleep for the past year. Dewey Taylor, another neighbor, testified that he heard a thumping noise from the bar on May 23 beginning at about 2:00 a.m., which lasted for at least an hour and prevented him from sleeping.

Stevens testified in his defense. He said he had offered to buy Gibbs's and Taylor's homes for their appraised value. He also testified that "thump-thump" noises were often generated by car stereos in his parking lot and when he heard those noises he asked the drivers to turn their music down. He said that prior to the weekend of May 22–23 he had taken steps to reduce the sound emanating from his bar, including installing devices designed to monitor and control audio output, reducing and moving the bass speakers, installing more drop panels in the roof, and adding insulation and heavy steel doors.

Judge Fuld ruled based on this evidence that Stevens had violated the noise ordinance on both dates. Stevens then filed a motion for reconsideration, attacking the validity of the ordinance. He argued that the ordinance was unconstitutionally vague; that is, that its terms were so imprecise that it did not give adequate notice of what conduct was prohibited and encouraged arbitrary enforcement by Borough officials. He also challenged the ordinance for overbreadth, arguing that the threat of criminal sanctions would deter amplified campaign announcements and other protected speech.

Judge Fuld granted the motion for reconsideration. After considering the parties' supplemental briefing, he upheld the ordinance, finding that it was a "reasonable effort to control obnoxious noise."

In October 2004, Stevens was again cited (five times) for violating the ordinance. Before trial on these violations, Stevens moved to dismiss the citations based on the same legal claims raised in his previous case: that the ordinance was unconstitutionally vague and overbroad. He also argued that the Borough had acted outside its authority in enacting the ordinance. District Court Magistrate David L. Zwink denied the motions, ruling that the ordinance was constitutional and that the Borough had authority to regulate noise under its land use power. Trial was held over the course of four days in August 2005. Magistrate Zwink convicted Stevens of two of the five charges.

Stevens appeals his convictions.

*Did the Borough have authority to enact the noise ordinance?*

The Matanuska–Susitna Borough is a second-class borough. That means it is a "general law" municipality—that is, it only has those powers conferred by statute.[1] (A home rule borough or city, by contrast, may exercise all legislative powers not prohibited by law or charter.[2]) Stevens argues that the noise ordinance falls outside the Borough's enumerated powers.

█ All municipalities, including second-class boroughs, have general powers to, among other things, establish salaries for municipal employees, levy taxes, enforce ordinances, and acquire and dispose of property.[3] A second-class borough has certain additional powers conferred by statute, some of which are mandatory and some of which are discretionary.[4]

In arguing that the Borough acted outside its authority in enacting the noise ordinance, Stevens points to AS 29.35.210, which lists the powers second-class boroughs have discretion to exercise. Stevens argues, and the Borough concedes, that nothing in this statute gives the Borough discretion to pass a noise ordinance and that no election among voters in the Borough was held to confer that discretion as authorized in AS 29.35.210(c) and (d).

Instead, the Borough argues that the noise ordinance is a proper exercise of its mandatory land use power.[5] More specifically, the Borough argues that AS 29.40.040(a)—in particular the portion italicized below—gave it authority to enact the noise ordinance at issue in this case:

> Land use regulation. (a) In accordance with a comprehensive plan adopted under AS 29.40.030 and in order to implement the plan, the assembly by ordinance shall adopt or amend provisions governing the use and occupancy of land that may include, but are not limited to,
>
> (1) zoning regulations restricting the use of land and improvements by geographic districts;
>
> (2) land use permit requirements designed to encourage or *discourage specified uses* and construction of specified structures, or to *minimize unfavorable effects of uses* and the construction of structures;
>
> (3) measures to further the goals and objectives of the comprehensive plan.[6]

This statute appears to authorize the Borough to control unwanted noise in at least three ways: by zoning districts; by land use permit requirements; or by other measures designed "to further the goals and objectives of the comprehensive plan."

In his briefing before this court, Stevens does not respond to the Borough's argument that the noise ordinance is a proper exercise of its areawide land use power. Nor does Stevens address, or even acknowledge, Magistrate Zwink's ruling in the Borough's favor

---

1. AS 29.04.020; AS 29.04.030; *Libby v. Dillingham*, 612 P.2d 33, 42 (Alaska 1980).

2. Alaska Const., art. X, § 11; AS 29.04.010.

3. AS 29.35.010; *see generally* AS 29.35.

4. *See, e.g.,* AS 29.35.150–180; AS 29.35.210.

5. AS 29.40.010.

6. Emphasis added.

on this issue. Because Stevens's briefing is inadequate, we do not resolve the question of whether the Borough acted within its authority in issuing the noise ordinance.[7]

*Is the noise ordinance unconstitutionally overbroad?*

Stevens next argues that the ordinance impermissibly chills free speech in violation of the first amendment because it limits amplified noise during too many hours of the day and night.

The Borough's noise ordinance prohibits the following:

(A) Noise created by the operation, playing or permitting the operation or playing of any radio, stereo, television, phonograph, loudspeaker, speaker system, drum, musical instruments, sound amplifier, or similar sound-amplifying device which produces, reproduces, or amplifies sound in such a manner as to be plainly audible outside the real property boundary of the property on which the operation, playing, or permitting to play occurs for a duration of five minutes or more, and during Sunday through Thursday from noon to 4 p.m. and from 10 p.m. to noon, and on Friday and Saturday from noon to 4 p.m. and from 11 p.m. to noon, is a noise disturbance and public nuisance in violation of this code.

(B) No person shall operate or permit the operation of any radio, stereo, television, phonograph, loudspeaker, speaker system, drum, musical instrument, sound amplifier or similar sound-amplifying device that creates vibration which is above the vibration perception threshold of an individual at or beyond the real property boundary of the source of the vibration. For purposes of this chapter, "vibration perception threshold" means the minimum ground or structure-borne vibrational motion necessary to cause a normal person to

be aware of the vibration by such direct means as, but not limited to, sensation by touch or visual observation of moving objects. Violation of this paragraph constitutes a public nuisance.[8]

"Plainly audible noise" is defined as "any noise for which the information content of that noise is unambiguously transferred to a listener, such as, but not limited to, understanding of spoken speech, comprehension of whether a voice is raised or normal, or comprehension of musical rhythms."[9] "Noise disturbance" is defined as "amplified sound which endangers or injures the safety or health of humans or animals, or annoys or disturbs a reasonable person of normal sensitivities, or endangers or injures personal or real property."[10] The ordinance exempts sounds generated during certain types of emergencies and permitted special events, as well as amplified noises coming from vehicles moving along public rights-of-way (*i.e.*, car stereos).[11]

(The noise ordinance could be read to restrict noise produced by musical instruments that are not amplified. Subsection A above, defining "prohibited acts," lists "[n]oise created by ... any radio, stereo, television, phonograph, loudspeaker, speaker system, drum, musical instrument, sound amplifier, or similar sound-amplifying device." When this sentence is read in isolation, it is not obvious that the Assembly intended the phrase "or similar sound-amplifying device" to modify every item in the list, including drums and musical instruments. The definitions section of the ordinance, however, unambiguously defines a "noise disturbance" to encompass only amplified sound. Because only amplified sound is at issue in this case, we need not decide this question.)

In *Ward v. Rock Against Racism*,[12] the United States Supreme Court outlined three factors that courts must consider in

---

7. *See Tenala, Ltd. v. Fowler*, 921 P.2d 1114, 1121 n. 10 (Alaska 1996); *Lewis v. State*, 469 P.2d 689, 691–92 n. 2 (Alaska 1970); *Bobby v. State*, 950 P.2d 135, 138 (Alaska App.1997).

8. Matanuska–Susitna Borough Code (MSB) 8.52.015.

9. MSB 8.52.035(A).

10. *Id.*

11. MSB 8.52.020(A).

12. 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

determining whether a time, place, and manner limitation the government places on music violates the first amendment. The first factor is whether the regulation is justified without reference to the content of the speech.[13] "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys."[14] The second question is whether the city's regulation is "narrowly tailored to serve a significant governmental interest."[15] To satisfy this prong, the government need not adopt the least restrictive or least intrusive means of protecting its interest, so long as the means chosen are not "substantially broader than necessary to achieve the government's interest" and the "regulation promotes a substantial government interest that would be achieved less effectively absent the regulation."[16] The third question is whether the regulation leaves open ample alternative channels of communication. This factor is easily met by a regulation that limits the degree of amplification but has no effect on the quantity or content of expression.[17] We have adopted this approach as a matter of state constitutional law.[18]

 Stevens does not claim that the Borough's noise ordinance regulates the content of speech or precludes alternative, quieter, means of communication. His only claim is that the ordinance is broader than necessary to achieve the Borough's interest in controlling disturbing amplified noise because it restricts such noise for too many hours of the day and night. (Stevens was convicted of violating the noise ordinance between 11:00 p.m. and 5:00 a.m. However, the only hours the noise ordinance restrictions are *not* in force are from 4:00 p.m. to 10:00 p.m. during the week, and from 4:00 p.m. to 11:00 p.m. on the weekend.[19])

As the Supreme Court declared in *Ward,* the government has a substantial interest in protecting citizens from unwelcome noise, particularly in the privacy of their homes, and it need not choose the least restrictive means to accomplish that goal.[20] Although Stevens asserts that the ordinance is unconstitutionally restrictive, he offers no basis for finding that the time-of-day limitations—which were incorporated into the ordinance following testimony at a public hearing—reach substantially more conduct than necessary to achieve the Borough's interest in protecting the peace of its residents. Stevens has therefore not established that the ordinance unduly burdens protected speech.

*Is the noise ordinance unconstitutionally vague?*

Stevens's next claim is that the ordinance is so vague that it does not give adequate notice of what conduct is prohibited and encourages arbitrary enforcement by Borough officials. He argues that a person seeking to comply with the ordinance, or to enforce it, can only guess what noise will annoy or disturb a "reasonable person of normal sensitivities" or what vibration will "cause a normal person to be aware."[21] He also argues that the ordinance promotes arbitrary enforcement because it contains no objective criteria for determining what is a violation, thus granting property owners a "standardless sweep" to retaliate against their neighbors.[22]

Noise ordinances that rely on a purely subjective standard to determine what vol-

13. *Id.* at 791, 109 S.Ct. at 2754.

14. *Id.* (citation omitted).

15. *Id.* at 796, 109 S.Ct. at 2756.

16. *Id.* at 798–800, 109 S.Ct. at 2757–58 (citations omitted).

17. *Id.* at 802, 109 S.Ct. at 2760.

18. *Earley v. State,* 789 P.2d 374, 376 n. 2 (Alaska App.1990).

19. MSB 8.52.015.

20. 491 U.S. at 796–98, 109 S.Ct. at 2756–58 (citation omitted).

21. MSB 8.52.015(B); MSB 8.52.035(A).

22. *Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

ume of noise is annoying or disturbing have generally not passed constitutional muster.[23] For instance, in *Easy Way of Lee County, Inc. v. Lee County*,[24] a Florida appellate court struck down as unconstitutionally vague a portion of a noise ordinance that, in effect, prohibited noise "that *any individual* person 'within the area of audibility' happens to find *personally* 'disturbing.' "[25] Likewise, in *Fratiello v. Mancuso*,[26] a federal court struck down an ordinance that barred "unnecessary noises or sounds . . . which are physically annoying" because the ordinance relied on subjective determinations of what was "unnecessary" and "annoying."[27] And in *Lutz v. City of Indianapolis*,[28] the court of appeals struck down as vague an ordinance that prohibited noise that was "unusual" or "unnecessary" or that "annoys . . . others," observing that the ordinance employed no reasonableness test for determining what was a violation.[29]

■ The Borough's ordinance does not suffer from this infirmity; it places specific geographic and time limitations on amplified noise that "annoys or disturbs a reasonable person of normal sensitivities."[30] As we have previously observed, "[a] statute is not vague merely because a fact finder must determine questions of reasonableness."[31] In other jurisdictions, noise ordinances that incorporate a "reasonable person" standard, expressly or implicitly, have generally been upheld. For example, in *City of Madison v. Baumann*[32] the Wisconsin Supreme Court

rejected a vagueness challenge to an ordinance that forbade "making any noise tending to unreasonably disturb the peace and quiet of persons in the vicinity."[33] The court found that the word "reasonably" saved the ordinance from being impermissibly vague.[34] "The test for a possible violator," the court explained, "is simply the time honored and time validated reasonable person test, *i.e.*, what effect will my conduct—singing or playing—have upon persons in the vicinity under the circumstances."[35]

Likewise in *State v. Garren*,[36] a North Carolina court found that an ordinance prohibiting "loud, raucous and disturbing" noise—which the ordinance defined as sound that "annoys, disturbs, injures or endangers the comfort, health, peace or safety of reasonable persons of ordinary sensibilities"—provided a sufficiently objective standard to guide conduct.[37] Some courts have gone further and, in rejecting a vagueness challenge, construed a noise ordinance to contain an implied reasonable person standard. In *City of Beaufort v. Baker*,[38] the South Carolina Supreme Court upheld the constitutionality of an ordinance barring any person from willfully disturbing a neighborhood or business by making "loud and unseemly noises" after construing "loud and unseemly" to mean "unreasonably loud in the circumstances."[39] So construed, the court found the ordinance "clear enough." It noted: "The objective 'reasonable' test is used in many areas of the law as an appropriate

---

**23.** *See generally* Carolyn Kelly MacWilliam, *Validity of State or Local Enactment Regulating Sound Amplification in Public Area*, 122 A.L.R.5th 593 § 15 (West 2006).

**24.** 674 So.2d 863 (Fla.Dist.Ct.App.1996).

**25.** *Id.* at 867 (emphasis in original).

**26.** 653 F.Supp. 775 (D.R.I.1987).

**27.** *Id.* at 790.

**28.** 820 N.E.2d 766 (Ind.Ct.App.2005).

**29.** *Id.* at 768–70.

**30.** MSB 8.52.015(B); MSB 8.52.035(A).

**31.** *Earley*, 789 P.2d at 376 n. 2 (citing *Stock v. State*, 526 P.2d 3, 7–13 (Alaska 1974)).

**32.** 162 Wis.2d 660, 470 N.W.2d 296 (1991).

**33.** *Id.* at 297.

**34.** *Id.* at 302.

**35.** *Id.*

**36.** 117 N.C.App. 393, 451 S.E.2d 315 (1994).

**37.** *Id.* at 318–19 (listing other cases).

**38.** 315 S.C. 146, 432 S.E.2d 470 (1993).

**39.** *Id.* at 474. *See also State v. Dorso*, 4 Ohio St.3d 60, 446 N.E.2d 449, 452 (1983) (construing Cincinnati ordinance to forbid noise that "could be anticipated to offend the reasonable person, *i.e.*, the individual of common sensibilities").

determinant of liability and thus a guide to conduct." [40]

In line with this authority, we conclude that the Borough's ordinance provides adequate notice of what conduct is prohibited. The ordinance defines as a prohibited "noise disturbance" amplified noise that is "plainly audible" across a real property boundary for five minutes or more during specified hours.[41] A noise disturbance is further defined as, among other things, amplified noise that "annoys or disturbs a reasonable person of normal sensitivities." [42] In addition, "plainly audible noise" is defined as "noise for which the information content of that noise is unambiguously transferred to a listener, such as, but not limited to, understanding of spoken speech, comprehension of whether a voice is raised or normal, or comprehension of musical rhythms." [43] Also forbidden as a public nuisance is physical vibration from amplified sound that is perceptible to a normal person beyond the real property boundary of the source of the vibration.[44] Taken together, these standards provide sufficient notice of what conduct is prohibited to satisfy due process.

█ We further conclude that Stevens has not shown that the ordinance is so vague that it will lead to arbitrary enforcement by Borough officials. Alaska courts will not invalidate a statute on this ground unless there is evidence of a history of arbitrary or capricious enforcement or the statute is " 'so conflicting and confused' that arbitrary enforcement is inevitable." [45] The ordinance establishes sufficiently objective standards to guard against the risk that Stevens conjectures—convictions based on the fabricated testimony of vindictive or hypersensitive neighbors. Moreover, while Stevens asserts that he has been singled out—and, indeed, the ordinance was apparently enacted because of the noise problems created by his business—he has pointed to no circumstance in which the Borough failed to enforce the noise ordinance when faced with similar complaints.

*Did the Borough violate the discovery rules, and did Judge Fuld err by refusing to continue the trial to allow for discovery?*

Stevens argues that, in his first trial, he was not provided with the discovery he was entitled to under Criminal Rule 16(b) and that Judge Fuld should have granted a continuance to permit him to obtain that discovery.

Stevens was cited for violating the noise ordinance in May 2004. Trial was held almost five months later, in October 2004. During that period, a default judgment was entered and vacated. For reasons that are not explained in the record, Stevens delayed hiring an attorney until the day before trial. At trial, the attorney said he had tried to view the Borough's exhibits that morning but had been unsuccessful. The attorney asked for a forty-five day continuance to obtain discovery and to prepare for trial. Judge Fuld initially reserved the decision on whether to grant a continuance.

Later, when Stevens renewed his request for discovery, Judge Fuld asked Stevens why he had waited so long to request discovery. Stevens argued that a letter he wrote to the Borough on May 24, 2004 was in effect a lay request for discovery and that the Borough had not complied with that request. Stevens's attorney read part of the letter to Judge Fuld:

> Has this ord[i]nance been codified? Please clarify what is [meant by] Fish Heads Bar & Grill is in the core planning area. Is there MSB real estate other than city boundary that is not affected by this ord[i]nance? Your comments Fish Heads has a vibration perception above the threshold of a normal person, please send me expert data to show this fact. What is

---

40. *Beaufort,* 432 S.E.2d at 474 (citations omitted).

41. MSB 8.52.015(A).

42. MSB 8.52.035(A).

43. *Id.*

44. MSB 8.52.015(B); MSB 8.52.035.

45. *Lazy Mountain Land Club v. Matanuska–Susitna Borough Bd. of Adjustment and Appeals,* 904 P.2d 373, 384 (Alaska 1995) (citations omitted).

your procedure for determin[ing] what is a normal threshold? I will need this information to help me comply with this ord[i]nance. Has this code been enforced anywhere else in the Borough?

Judge Fuld responded: "All right. In any event this case has had a trial date for a long time and I don't want to hear any more argument. We're going to take testimony now."

■ Based on this record, Judge Fuld could reasonably have concluded that the Borough had committed no discovery violation. Furthermore, even if the Borough had violated the discovery rules, Stevens's claim would fail because he failed to show any prejudice. To justify a continuance, Stevens had to "set forth a plausible way in which his ... defense could be prejudiced by the government's failure to make timely disclosure." [46] The only discovery Stevens claims he was denied was audio tapes made by the Borough's investigator. As the investigator conceded at trial, those audio tapes did not record any amplified sound—only the rustling of trees and other innocuous noises. In convicting Stevens, Judge Fuld noted that the tapes had not recorded any bass sound but concluded that testimony about the noise by the investigator and nearby homeowners had nevertheless established Stevens's violations beyond a reasonable doubt. Stevens did not explain at trial, nor has he on appeal, how he would have benefitted from getting copies of these audio tapes before trial. Given these circumstances, Judge Fuld acted well within his discretion in denying Stevens a continuance for the purpose of obtaining these tapes.[47]

*Did Judge Fuld deprive Stevens of his right to present a defense?*

Stevens argues that Judge Fuld deprived him of his constitutional right to present a defense by cutting short his cross-examination of the Borough's witnesses and by not permitting him to present all his witnesses.

During the Borough's case, Judge Fuld limited the examination of each witness to three minutes for each side. Stevens raised no objection to this restriction. There is nothing in the record that suggests that Judge Fuld enforced this limitation against Stevens or that Stevens's questioning was cut short because of it. Moreover, on appeal, Stevens has not explained how he was prejudiced.

The record is equally devoid of support for Stevens's claim that Judge Fuld infringed upon his right to present a defense by not permitting him to present all his witnesses. After Stevens testified, Stevens's attorney sought to call only one other witness, Tom Conway. This discussion followed:

*Court:* For what effect?

*Defense counsel:* Basically because I want to introduce exhibits that show that the ordinance that was proposed on May 3 was completely different than the ordinance that was passed on May 18 which is contrary ...

*Court:* That's legal argument, it goes nothing to the facts here, you can do that in a motion.

*Defense counsel:* Okay.

In his motion for reconsideration, Stevens did not raise any claim related to this alleged inconsistency between the proposed and final ordinances.

■ Because Stevens did not object to Judge Fuld's ruling, he did not preserve his claim that the court erred in precluding this witness.[48] Moreover, even if the court had erred, Stevens has not alleged, much less shown, that he was prejudiced by that error.

*Was there substantial evidence to support Judge Fuld's verdict?*

Stevens argues that there was not substantial evidence to support his October 2004 convictions because the investigator's tape recorder failed to record the complained-of sound and because Stevens testified that the

---

**46.** *See Jurco v. State,* 825 P.2d 909, 917 (Alaska App.1992).

**47.** *See Gregoire v. Nat'l Bank of Alaska,* 413 P.2d 27, 33 (Alaska 1966) (refusal to grant continu-

ance will not be disturbed on appeal unless there is an abuse of discretion).

**48.** *See Disciplinary Matter Involving Triem,* 929 P.2d 634, 642 (Alaska 1996).

noise could have come from vehicles parked in his lot. In other words, Stevens argues that if the evidence is viewed in the light most favorable to him, it is insufficient to support his convictions.

■ In reviewing an attack on the sufficiency of the evidence, we are required to view the record in the light most favorable to upholding the judge's verdict.[49] Viewed in that light, there was substantial evidence to support Stevens's convictions. Stevens was convicted of generating amplified noise that was "plainly audible" and disturbing to his neighbors for more than five minutes during prohibited hours. A private investigator hired by the Borough testified that he stood in the residential subdivision adjacent to the Fish Heads bar for one hour on each of the early mornings at issue and heard the "whomp, whomp" sound of amplified bass music "fairly consistent throughout that hour." He testified that he was "absolutely positive" the sound came from the Fish Heads bar. This report was corroborated in part by two residents of the subdivision who testified to hearing a repeated "thumping" noise from the Fish Heads bar in the late night and early morning hours that disturbed their sleep. This testimony provided sufficient relevant evidence "to support a conclusion by a reasonable mind that there was no reasonable doubt as to [the defendant's] guilt."[50]

Stevens also claims that there was insufficient evidence to support his August 2005 convictions. However, his argument on this issue cites to the transcript of his first trial in October 2004. His claim is therefore waived for inadequate briefing.[51]

*Conclusion*

Stevens's convictions are AFFIRMED.

MANNHEIMER, Judge, concurs.

MANNHEIMER, Judge, concurring.

I write separately to emphasize that our affirmance of the judgements in these cases does not mean that we agree with the Borough's assertion that the noise ordinance at issue here is a proper exercise of the Borough's land use power under AS 29.40.040(a). The Borough relied on this rationale in the trial court, and Magistrate Zwink ruled in the Borough's favor on this point. But we are upholding the magistrate's ruling simply because Stevens has failed to brief the merits of that ruling.

There are reasons to doubt the Borough's assertion that the contested ordinance is justified under its land use power. AS 29.40.040(a) states that a second-class borough (such as the Matanuska–Susitna Borough) may regulate land use through (1) zoning regulations, (2) land use permitting requirements, and (3) "[any other] measures to further the goals and objectives of the [borough's] comprehensive plan" adopted under AS 29.40.030.

The Borough relies on the second of these clauses, the permitting clause. That clause of AS 29.40.040(a) declares that the Borough is empowered to enact:

> land use permit requirements designed to encourage or discourage specified uses [of land] and construction of specified structures, or to minimize unfavorable effects of [land] uses and the construction of structures[.]

The Borough claims that this statutory language—in particular, the phrases "discourage specified uses [of land]" and "minimize unfavorable effects of [land] use"—is the authorization for its noise ordinance.

The problem with the Borough's argument is that the noise ordinance at issue here does not appear to be a permitting ordinance. The ordinance simply establishes limits on the noise that can be generated on any property within the Borough (outside the city limits of Palmer, Wasilla, and Houston). It is true

**49.** *Ross v. State,* 586 P.2d 616, 618 (Alaska 1978); *Beck v. State,* 408 P.2d 996, 997 (Alaska 1965).

**50.** *Ross,* 586 P.2d at 618; *Beck,* 408 P.2d at 997.

**51.** *Katmailand, Inc. v. Lake and Peninsula Borough,* 904 P.2d 397, 402 n. 7 (Alaska 1995); *Petersen v. Mutual Life Ins. Co. of New York,* 803 P.2d 406, 410 (Alaska 1990); *Wren v. State,* 577 P.2d 235, 237 n. 2 (Alaska 1978).

that a provision of the ordinance (8.52.020) allows an exemption from the normal noise limits for "a special event properly permitted under this code". But there is apparently no method for Stevens or any other property owner to apply for or obtain a permit that would exempt an ongoing business from the noise limits established by the ordinance.

Moreover, if the challenged ordinance is indeed a land use ordinance, the record leaves some doubt as to whether the Borough complied with state law when it enacted the ordinance. Under AS 29.40.040(a), all of a borough's land use ordinances must be adopted in accordance with, or to implement, a validly enacted comprehensive land use plan.[1] This requirement "helps to guard against prejudice, arbitrary decision-making, and improper motives" by providing substantive standards to govern the borough's individual zoning decisions.[2] This safeguard is particularly important in cases like the present one—where the borough government responded to public complaints regarding one particular person's use of his land.

Neither in its trial court pleadings nor in its briefing to this Court has the Borough explained how, or if, the challenged noise ordinance accords with or implements any provision of a comprehensive land use plan adopted by the Borough. From the record before us, it appears that the Borough Assembly did not discuss this issue at all when the Assembly debated and enacted the noise ordinance.[3]

Because I have these doubts about the Borough's offered justification for the noise ordinance, I want to emphasize that our ruling in this case is not intended to constitute an endorsement of the Borough's legal argument.

### Order

In *Stevens v. Matanuska–Susitna Borough*, Alaska App. Opinion No.2051 (June 23,

2006), we affirmed Appellant Stevens's convictions in two cases for violating a Matanuska–Susitna Borough noise ordinance. Stevens had challenged the Borough ordinance on several grounds. We declined to resolve one of Stevens's claims—his claim that the Borough lacked the statutory authority to enact the noise ordinance—because we concluded that Stevens had not adequately briefed the issue.

Stevens filed a petition for rehearing, asking us to reconsider that decision. He now wishes to supplement his briefing so that the issue can be decided on the merits.

When Stevens raised this claim in district court, he relied on a specific statute: AS 29.35.210. He pointed out that this statute gave the Borough discretion to exercise a number of municipal powers—but that it did not give the Borough the authority to regulate noise.

The Borough conceded this point. It responded that the authority to enact the noise ordinance was found elsewhere in the Alaska Statutes—in AS 29.40.040(a), the statute defining the Borough's authority to regulate the use of land within its borders.

The trial magistrate agreed that the noise ordinance was a proper exercise of the Borough's land-use power, and issued a written order explaining his reasoning.

When Stevens raised this claim on appeal to this Court, he did not address the trial court's ruling. Instead, he repeated, essentially verbatim, the argument he made in district court—even though the Borough had already conceded his point.

In asking us to reconsider our conclusion that this amounted to inadequate briefing, Stevens notes that he cited authority in support of his argument. But the authority Stevens cited was irrelevant to the only disputed issue before this Court: whether the noise ordinance was a proper exercise of the land-use power conferred by AS 29.40.040(a). Stevens did not cite that statute anywhere in

---

1. *Lazy Mountain Land Club v. Matanuska–Susitna Borough Board of Adjustment and Appeals*, 904 P.2d 373, 377–78, 385 (Alaska 1995). *See also Price v. Dahl*, 912 P.2d 541, 542–43 (Alaska 1996).

2. *Lazy Mountain Land Club*, 904 P.2d at 377–78.

3. Minutes of the Matanuska–Susitna Borough Assembly, May 18, 2004, discussion of Ordinance No. 04–092, the Noise and Vibration Ordinance, adopting chapter 8.52 of the Matanuska–Susitna Borough Code.

his briefs. And although he responded to questions on this issue at oral argument, that was too late to preserve his claim for appeal. *Cf. Adamson v. University of Alaska,* 819 P.2d 886, 889 (Alaska 1991).

It is well-settled that "[f]ailure to argue a point constitutes an abandonment of it." *State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 528 (Alaska 1980). Even if we were to accept (as the Borough did) Stevens's claim that AS 29.35.210 does not give the Borough authority to enact a noise ordinance, we can not, in the absence of adversarial briefing, fairly resolve the larger and more complex question of whether the Borough has any authority under the Alaska Statutes to issue the ordinance.

■ Stevens argues that we should permit supplemental briefing on this issue. But the cases he cites in support of this argument involve either an unrepresented litigant or a party who, for whatever reason, failed to respond at all to a motion filed by the opposing party. Stevens was represented by counsel, and he filed briefs in two cases. When he filed those briefs, he had notice of all the arguments and rulings made in district court.

Accordingly, in consideration of the Petition for Rehearing filed on July 3, 2006,

**IT IS ORDERED:**

The Petition for Rehearing is **DENIED**.

Entered at the direction of the court.