**Charles Lee DAVIS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. A–10405, A–10521.**

Court of Appeals of Alaska.

July 23, 2010.

**24.** *Id.*

Charles Lee Davis, pro se, Anchorage, for Appellant.

W. Michael Perry, Assistant District Attorney, Palmer, Geoffry B. Wildridge, Assistant Attorney General, Fairbanks, and Daniel S. Sullivan, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

BOLGER, Judge.

In two separate cases, Charles Lee Davis was convicted for violating the state's commercial motor vehicle regulations by operating a commercial motor vehicle without a valid medical examiner's certificate (Case No. A–10405) and by operating a commercial motor vehicle that had been placed out of service for safety violations (Case No. A–10521).[1] These cases were consolidated for consideration and decision.

In both cases, Davis contends that the State lacks the authority to enforce, or to adopt as state law, the federal commercial motor vehicle regulations. He also asserts in both cases that he was not operating a commercial motor vehicle, that there were discovery violations, and that the traffic stops were unlawful. In Case No. A–10405, he asserts that the district court erred when it denied his request to play a videotape during trial. Finally, in Case No. A–10521, he argues that he was entitled to a jury trial. We disagree with Davis on all of these issues.

### Background

In Case No. A–10405, on June 16, 2008, Alaska State Trooper Sergeant Jake Covey stopped Davis because Davis did not have a license plate on the trailer he was pulling with his semi-tractor. Among other things, under the state's commercial motor vehicle regulations, people who drive commercial motor vehicles are required to carry a valid medical examiner's certificate.[2] When contacted, Davis was unable to produce this certificate. Consequently, he was given a citation for operating a commercial motor vehicle without a valid medical examiner's

certificate. At a bench trial, District Court Judge Gregory Heath found Davis guilty of this violation.

In Case No. A–10521, on July 27, 2007, Davis's vehicle was ordered "out of service" by Commercial Enforcement Officer Martin Baston as the result of a routine commercial vehicle inspection at the Glenn Highway outbound weigh station. Davis's vehicle, a tractor-trailer combination, was placed out of service for two reasons. First, because the trailer had an unsecured load of five-gallon buckets, one of which was ready to fall off the trailer. Second, because two adjacent tires on the same axle on the semi-tractor had a tread depth of less than 1/32 of an inch. Baston explained that under the state's regulations, the tread depth on the tires had to be at least 2/32 of an inch.

Four hours later, Officer Baston contacted Davis again. Davis had changed only one of the substandard tires. Because he did not change the other substandard tire, nor adequately secure the load of buckets, his vehicle was still "out of service." Officer Baston issued a citation for operating a commercial motor vehicle that had been placed out of service. At a trial before Magistrate Ronald Wielkopolski, he was found guilty of this violation.

### Discussion

#### The State is enforcing state regulations, not federal regulations

■ Davis asserts in both of these cases that the State has no authority to enforce the federal law regulating commercial motor vehicles. But the State is enforcing state regulations, not federal. The Alaska Legislature directed the State Department of Transportation to "adopt regulations under AS 44.62 (the Administrative Procedure Act) that are necessary to implement requirements imposed by federal statute or regulation that relate to commercial motor vehicles and that are necessary to avoid loss or withholding of

---

1. 17 Alaska Administrative Code (AAC) 25.210(a)(5) & (b)(5) and 17 AAC 25.210(a)(8).

2. 17 AAC 25.210(a)(5) & (b)(5).

federal highway money."[3]  Based on this authority, the Department adopted as state law various portions of Title 49 of the Code of Federal Regulations.  Consequently, the adopted portions of the federal regulations are now state law and are enforced by various state agencies.  Among the regulations adopted as state law are the regulations Davis violated—17 AAC 25.210(a)(5) and (b)(5) (medical certificate required) and 17 AAC 25.210(a)(8) (moving "out of service" vehicle before repair completed).

■ Regulations enacted by state agencies are presumptively valid, and the burden of proving invalidity is on the party challenging the regulations.[4]  Generally speaking, regulations promulgated by an executive department must be authorized by statute.[5]  Also, a regulation must be consistent with and reasonably necessary to carry out the purpose of the authorizing statute.[6]  A regulation is consistent with a statute if it has a reasonable relation to statutory objectives.[7]

Here, AS 19.10.060(c) specifically directs the Department to adopt regulations necessary to implement requirements imposed by federal statutes or regulations relating to commercial motor vehicles.  By expressly adopting the pertinent portions of the federal regulations and revising them as necessary to apply them to Alaska roadways, the Department acted consistently with its statutory authority and the legislature's objective.[8]

We conclude that Davis has not shown that the State lacked the authority to adopt and enforce commercial motor vehicle regulations patterned on the corresponding federal regulations, nor has he shown that the state's commercial motor vehicle regulations are unconstitutional or otherwise invalid.

### Davis was driving a commercial motor vehicle

■ In Case No. A–10405, Davis contends that the vehicle he was driving did not fall under the definitions of "commercial motor vehicle" and "commercial purpose" and that "[n]ot one shred of evidence was presented that [he] was involved" in using a commercial motor vehicle for commercial purposes.  Meanwhile, in Case A–10521, he asserts that he was not operating a commercial motor vehicle in "commerce" as that term is defined by federal statute; that is, he contends that he was not operating a vehicle in interstate commerce.[9]  He also contends that he was not operating a commercial vehicle because he was not getting paid to haul property.

Under the state regulations that Davis violated, a commercial motor vehicle is (1) "a self-propelled or towed vehicle ... used to transport passengers or property for commercial purposes," (2) "used upon a highway or vehicular way," and (3) that "has a gross vehicle weight rating or gross combination weight rating greater than 10,000 pounds."[10]  The phrase "commercial purposes" means "activities for which a person receives direct monetary compensation or activities for which a person receives no direct monetary compensation but that are incidental to and done in furtherance of the person's business."[11]  Under this statute, the only tractor-trailer combinations exempted are those

**3.**  AS 19.10.060(c).

**4.**  *State v. Alyeska Pipeline Serv. Co.*, 723 P.2d 76, 78 (Alaska 1986).

**5.**  *See* AS 44.62.020 ("To be effective, each regulation adopted must be within the scope of authority conferred and in accordance with standards prescribed by ... law.").

**6.**  AS 44.62.030.

**7.**  *Rollins v. State, Dept. of Rev.*, 991 P.2d 202, 207 (Alaska 1999).

**8.**  *See Alyeska Pipeline Serv. Co.*, 723 P.2d at 78 ("The state has a statutory duty to control the state highway system, AS 19.05.010, AS 19.05.030(1), and is authorized to promulgate necessary regulations, AS 19.05.020.").

**9.**  *See* 49 U.S.C. § 31301(2) (" 'Commerce' means trade, traffic, and transportation: (A) in the jurisdiction of the United States between a place in a State and a place outside that State (including a place outside the United States); or (B) in the United States that affects trade, traffic, and transportation described in subclause (A) of this clause.").

**10.**  AS 19.10.399(1)(A)-(C)(i).  17 AAC 25.250(1) adopts this definition by reference.

**11.**  AS 19.10.399(2).

"*used exclusively* for purposes other than commercial purposes." [12]

### Sufficiency of the evidence

As just explained, in Case No. A–10405, Davis asserts that he was "outside of the definitions" of "commercial motor vehicle" and "commercial purposes," and that there was no evidence that his tractor-trailer combination was a commercial motor vehicle used for commercial purposes.

When a person challenges the sufficiency of the evidence supporting a conviction, this court must view the record in the light most favorable to upholding the verdict.[13]

Viewing the evidence in this fashion, the record shows that Alaska State Trooper Covey saw Davis driving a semi-tractor pulling a trailer that was not properly registered. Sergeant Covey testified that based on his experience, Davis's tractor-trailer combination met the weight standard for commercial motor vehicles, and that the trailer was carrying a full load of dirt.

After Covey's testimony, Officer Baston testified that Davis operated his vehicle under the name of "Davis Transport," had a state business license under the name of "Davis Transport," and that the semi-tractor was registered to Davis. Baston said that it was not unusual for drivers to subcontract their services and trucks to other companies. Baston further testified that, based on receipts from the scale house at a local sand and gravel company, Davis was hauling rock and gravel for two projects, and so he was in business for purposes of commercial motor vehicle enforcement.

Baston explained that "scale tickets" are used to record how much product a driver was transporting, and the scale tickets showed that Davis's truck had been used to transport material for an excavating company. Davis had been hauling, as recently as November 2008, up to 50,000 pounds for the projects. There were approximately fifty pages of these scale house tickets. The scale tickets were signed "Chuck" (Davis's first name is Charles).

For his part, Davis testified that he was not operating a commercial motor vehicle hired for monetary compensation. But he admitted that he was hauling multiple loads of dirt from "a friend's place" in his trailer and taking it to another friend who needed it for landscaping. Davis also testified that he had no occupation, but admitted that he would "get compensation for [his] labor."

Davis asserted that he only worked "intrastate" as opposed to "interstate." He argued that the federal regulations applied only to those driving commercial motor vehicles in interstate commerce and his case involved intrastate commerce.

But Davis was cited for violating a state regulation that expressly applies to both interstate and intrastate commerce: "A person may not drive a [commercial] motor vehicle in interstate or intrastate commerce unless the person ... has in the person's actual possession the original [or a copy of a] medical examiner's certificate that the person is physically qualified to drive a motor vehicle." [14]

The definition of "commercial purposes" is broad enough to include Davis's work even though he claimed he did not receive "money compensation" for his services. As explained earlier, "commercial purposes" includes "activities for which a person receives no direct monetary compensation but that are incidental to and done in furtherance of the person's business." [15] Davis presented no evidence that his vehicle was exempt from the state regulations because it was used "exclusively" for non-commercial purposes.

Viewing this evidence in the light most favorable to upholding the verdict, we conclude that the evidence shows that Davis was operating a commercial motor vehicle.

■ To the extent that Davis meant to raise a claim involving statutory interpreta-

---

12. AS 19.10.399(1)(D)(v) (emphasis added).

13. *Ross v. State,* 586 P.2d 616, 618 (Alaska 1978); *Beck v. State,* 408 P.2d 996, 997 (Alaska 1965).

14. 17 AAC 25.210(b)(5).

15. AS 19.10.399(2).

tion, he has not presented any evidence suggesting that the legislature intended to exempt from the definition of "commercial motor vehicle" vehicles like his that are used occasionally, as opposed to exclusively, for non-commercial purposes. Under AS 19.10.399(1)(D), semi-tractors and trailers like Davis's are exempt from the commercial motor vehicle regulations only if they are "used exclusively for purposes other than commercial purposes." Based on this, it is reasonable to conclude that the legislature intended that even vehicles used only occasionally for commercial purposes are still subject to the state's commercial motor vehicle regulations.

■ Similarly, in Case No. A–10521, Davis argues that he could not be guilty of operating a commercial motor vehicle that had been placed out of service because he was not subject to federal regulations. He also claims that he was not paid for hauling the property.

But Davis's vehicle was placed out of service based on state regulations,[16] and he was convicted of violating a state regulation that provides that no person may operate a motor vehicle declared "out of service" until all repairs have been satisfactorily completed.[17] In addition, state regulations define a commercial motor vehicle as one used upon a state "highway or vehicular way."[18]

At trial, the evidence showed that early in the morning on July 27, 2007, Davis's vehicle was placed out of service because of an unsecured load and because of two adjacent unsafe tires. He was stopped later in the morning because he was driving the vehicle but had not completely corrected the out-of-service violations.

When Davis testified, he described himself as a professional driver who had hauled all types of cargo, some "upwards of 200,-000 pounds" on his trailer. He admitted that on July 27, he was hauling used oil in buckets for a friend. He also admitted that in addition to the buckets, he was hauling another person's generator to a friend's house. There was testimony that Davis had a business license and operated as "Davis Transport," but he asserted that he was not subject to the commercial motor vehicles regulations because the friends were not paying him money for hauling these items.

Although Davis argues that he was not paid money for hauling other people's property, the evidence supports Magistrate Wielkopolski's conclusion that Davis's vehicle fell under the commercial motor vehicle regulations. Those regulations do not depend upon whether an operator receives actual monetary compensation for hauling property, and the regulations include vehicles that are used for "activities ... that are incidental to and done in furtherance of the person's business."[19] Here, Davis was using his tractor-trailer to haul property belonging to another person or persons. Even if Davis did not receive monetary compensation for this activity, Magistrate Wielkopolski could reasonably conclude that Davis was engaged in activities that were incidental to and done in furtherance of his business.

Finally, as previously discussed, under AS 19.10.399(1)(D)(v), only semi-tractor-trailers like Davis's that are "used exclusively for purposes other than commercial purposes" would be exempt from the commercial motor vehicle regulations. Here, Magistrate Wielkopolski could find that Davis's vehicle did not fall under this exemption.

Viewing the evidence in the light most favorable to upholding the verdict, we conclude that the evidence shows that Davis was operating a commercial motor vehicle.

■ In a related claim, Davis asserts that Magistrate Wielkopolski erred by not finding that Baston committed perjury at trial when he testified that some of the buckets Davis was hauling were unsecured. Davis points out that he showed the magistrate a photo-

---

**16.** 17 AAC 25.210(a)(7) (adopting 49 C.F.R. § 393.75(c) (requiring non-front tires to have a minimum tread of 2/32 of an inch) and 49 C.F.R. § 393.106(b) (requiring cargo be firmly immobilized or secured)).

**17.** 17 AAC 25.210(a)(8) (adopting 49 C.F.R. § 396.9). *See* 17 AAC 25.240(c).

**18.** AS 19.10.399(1), (7), (13).

**19.** AS 19.10.399(2).

graph and also testified that the buckets could not have been positioned the way that Baston claimed. But when a magistrate sits as the fact finder, it is the province of the magistrate to judge the credibility of the witnesses.[20] Here, Magistrate Wielkopolski credited the State's witnesses when he found that "a number of five gallon pails were inadequately secured from moving 'forward, back or up and down.'"

In summary, we conclude that there was sufficient evidence to sustain both convictions.

### Discovery and evidentiary issues

In both cases, Davis makes cursory single-sentence claims that the State failed to provide him with exculpatory evidence. Davis generally does not identify what evidence the State withheld. Davis does identify the videotapes related to each traffic stop. But he does not explain how the videotapes would have been exculpatory or how he was prejudiced.

In both cases, it appears that Davis did not know of the videotapes until trial. He pointed out this lack of notice during each trial, but he did not ask for a continuance or show how the lack of notice prejudiced him.

In Case No. A–10405, Judge Heath initially, over Davis's objection, allowed the State to play a portion of a videotape showing the traffic stop, then later reversed his decision. Davis also sought to introduce the videotape, but Judge Heath denied the request, ultimately ruling that the evidence Davis wanted to admit was irrelevant.

On appeal, Davis claims that the videotape would have shown that Covey had made threats and would have also included "the audio of Davis talking [to] a friend" on a cell phone during the traffic stop. But Davis does not explain how this evidence would have been relevant, let alone exculpatory. Even an expansive reading of his claims of error does not show any that involve threats made by Covey. Nor does Davis expressly explain what relevant evidence the tape would have shown regarding the phone conversation he had with his friend during the traffic stop.

That said, it appears that Davis believed that the videotape would show that he had a cell phone conversation, conducted on the cell's speaker phone, during which a friend of his told the troopers who stopped Davis that they lacked the authority to enforce the federal regulations.

But as Judge Heath recognized, this evidence was not relevant to Davis's case. The trooper was not enforcing federal regulations, he was enforcing state regulations. The evidence Davis wanted to introduce had no impact on the trooper's ability to enforce state law. Davis has not shown that the State failed to turn over exculpatory evidence or that Judge Heath erred by excluding the videotape.

During trial in Case No. A–10521, Davis told Magistrate Wielkopolski that he had asked the State to provide him with various cooperative agreements between the State and the federal government because he wanted to know how much the federal government paid the State for each inspection. He argued that this evidence would show that the State had an ulterior motive for conducting inspections.

But Davis apparently sought this information by filing a freedom of information request for the cooperative agreements, and at trial it was not clear where he had filed those requests. Magistrate Wielkopolski explained that a freedom of information request was not a motion to compel discovery. During this discussion with the magistrate, Davis did not show that he had actually served a discovery request on the State for this information. Nor did he ask for more time to do so.

Davis also told the magistrate that he had asked the State for exculpatory evidence but that none had been provided. He did not identify at trial the evidence he was referring to, nor does he provide much explanation on appeal.

That said, at page 17 of his brief, he cites to page 53 of the trial transcript, where he asked Baston about a videotape that Baston referred to during his testimony. This tape

---

**20.** *Gilley v. City of Anchorage,* 376 P.2d 484, 484 (Alaska 1962).

apparently showed that Davis had only changed one of his unsafe tires. Davis asked if Baston had preserved the videotape, and Baston replied that the videotape only lasted 24 hours (presumably because it is reused constantly at the weigh station).

But Davis did not then ask for any relief, or explain how he had been prejudiced by the absence of this videotape at trial. He did not claim that the tape would show that he had changed both of the unsafe tires. Rather, Davis admitted at trial that he had only changed one of the unsafe tires. His defense was that he had changed only one tire because—according to Davis—Baston had said that was all he had to do to fix the deficiency.

Davis has not shown that the State failed to turn over exculpatory evidence, nor has he shown that he was prejudiced in any way.

*Davis was not entitled to a jury trial*

▪ In Case No. A–10521, Davis claims that he was entitled to a jury trial because he risked losing his commercial driver's license. But Davis has not shown that the magistrate had any authority to take any action against Davis's commercial driver's license. In this case, Davis was convicted of violating 17 AAC 25.210(a)(8), a regulation that was adopted under AS 19.10.060(c). Under AS 45.75.380(a)(11), a violation of a regulation adopted under AS 19.10.060 is a violation, subject solely to a $500 fine.[21] Under the pertinent penalty statute there is no provision for incarceration or for the loss of a valuable license.[22]

The Alaska Supreme Court has held that a defendant is entitled to a jury trial when the conviction can result in the loss of a valuable license.[23] But the supreme court has also explained that there is no right to a jury trial for "relatively innocuous offenses as wrongful parking of motor vehicles [and] minor traffic violations."[24] Under District Court Criminal Rule 8, Davis's case involved a minor offense.[25] That is, his offense was one that was classified by statute as "an infraction or a violation;"[26] or an offense under statute "for which a conviction cannot result in incarceration, a fine greater than $500, or the loss of a valuable license;"[27] or an "offense for which a bail forfeiture amount has been authorized by statute and established by supreme court order."[28]

Although Magistrate Wielkopolski did not, and could not, take any action against Davis's commercial driver's license, an administrative agency suspended Davis's license based on his conviction for driving a commercial motor vehicle that had been placed out of service.[29] The Alaska Supreme Court addressed this situation in *Baker v. City of Fairbanks*,[30] where it explained that the right to a jury trial would apply only to criminal prosecutions, not to administrative proceedings.[31] The supreme court noted that the right to a jury trial did not extend to administrative proceedings because an agency's decision to suspend or revoke a license is focused on whether the individual is fit to drive, not whether the person has committed a crime.[32]

---

21. *See* AS 12.55.035(b)(7).

22. AS 12.55.035(b)(7); AS 45.75.380(a).

23. *Baker v. City of Fairbanks,* 471 P.2d 386, 402 (Alaska 1970).

24. *Id.*

25. See District Court Criminal Rule 8, which defines and "governs the procedure in cases involving minor offenses."

26. Alaska Dist. Ct. R.Crim. P. 8(b)(1).

27. Alaska Dist. Ct. R.Crim. P. 8(b)(5).

28. Alaska Dist. Ct. R.Crim. P. 8(b)(2). See Alaska Administrative Rule 43.1, establishing the Traffic Bail Forfeiture Schedule and listing the

offense of "operation of out of service vehicle" as a violation appropriate for disposition without court appearance. This particular offense has a bail forfeiture amount of $300.

29. AS 28.33.140(a)(6).

30. 471 P.2d 386.

31. *Id.* at 402.

32. *Baker,* 471 P.2d at 402 n. 28; *see also Alaska Bd. of Fish and Game v. Loesche,* 537 P.2d 1122, 1125 (Alaska 1975) (loss of license to guide hunts); *In re Cornelius,* 520 P.2d 76, 83 (Alaska 1974) (loss of license to practice law).

We relied on *Baker* in *State v. District Court* when we held that a person is entitled to a jury trial when the law requires *the court,* as opposed to *an agency,* to suspend or revoke a person's license upon conviction of certain offenses.[33] Here, Davis has not identified any statute that requires a court to suspend or revoke a commercial driver's license if the driver is convicted of violating 17 AAC 25.210.[34]

Because Magistrate Wielkopolski had no authority to take or limit Davis's commercial driver's license, Davis was properly tried in the district court under the procedures established in Rule 8. Davis was not entitled to a jury trial.

In a related claim, Davis asserts in Case No. A–10521 that Magistrate Wielkopolski did not have subject matter jurisdiction over the Alaska Administrative Code. But Davis was charged with a minor offense as defined in District Court Criminal Rule 8, and the legislature has authorized magistrates to preside over cases involving minor offenses.[35] Accordingly, the district court had jurisdiction over Davis's offense, and the magistrate had the authority to preside over Davis's trial.

### Other claims

Davis contends that the traffic stops in both cases were unlawful. But he did not raise these claims in the district court and so has not preserved them for appeal.[36]

Davis's briefs and their attachments are sometimes difficult to understand, and he may have intended to raise other claims in addition to those we have discussed here. To the extent that Davis attempted to raise other claims in his briefs, we conclude that these claims are inadequately briefed.[37]

### *Conclusion*

We therefore AFFIRM the district court judgments.

---

**33.** *State v. District Court,* 927 P.2d 1295, 1296–97 (Alaska App.1996) (discussing *Baker*).

**34.** *Cf.,* AS 28.15.181 and 28.15.185 (both requiring trial courts to revoke driver's licenses after drivers are convicted of certain offenses).

**35.** AS 22.15.120(a)(7), (c); *see also* AS 22.15.010 (establishing district courts) and Alaska Const., art. IV, § 1 ("The judicial power of the State is vested in a supreme court, a superior court, and the courts established by the legislature.").

**36.** *See Mahan v. State,* 51 P.3d 962, 965–66 (Alaska App.2002).

**37.** *See Petersen v. Mutual Life Ins. Co. of New York,* 803 P.2d 406, 410 (Alaska 1990) (issues that are only cursorily briefed are deemed abandoned); *Wilkerson v. Alaska Dep't of Health and Soc. Servs.,* 993 P.2d 1018, 1021–22 (Alaska 1999) (the fact that a litigant is appearing pro se does not relieve the litigant of the obligation to brief the issues they have raised).