William McKENZIE and Murray B. Stanley, Appellants,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

No. 4895.

Court of Appeals of Alaska.

June 25, 1981.

Roger W. DuBrock, Wade & DuBrock, Anchorage, for appellants.

David G. Berry, Municipal Prosecutor, and Theodore D. Berns, Municipal Atty., Anchorage, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

On October 14, 1977, Anchorage police officers with search and arrest warrants entered the Polar Bar and arrested William McKenzie and others for conducting a gambling game in violation of Anch.Mun.Code § 8.16.030.[1] Several days later further complaints were filed against McKenzie for similar violations and a complaint was filed against the owner of the Polar Bar, Murray Stanley for knowingly permitting gambling to take place in the bar.[2] After a jury trial,

---

1. Anch.Mun.Code § 8.16.030 reads as follows:

 *Advancing gambling activity.*

 It is unlawful for any person to advance gambling activity.

2. Anch.Mun.Code § 8.16.040, with which Stanley was charged, reads as follows:

 *Permitting gambling on own premises.*

 It is unlawful for any person to knowingly permit gambling on premises owned, rented or occupied by him.

McKenzie was convicted of two violations of Anch.Mun.Code § 8.16.030, and Stanley was convicted for a violation of one count of Anch.Mun.Code § 8.16.040. The cases were appealed to the superior court, which affirmed the convictions. The appeal to this court followed.

## CRIMINAL RULE 45

Stanley and McKenzie argue that the trial court erred in failing to dismiss their complaints for violation of Alaska R.Crim.P. 45. We have carefully examined the record and conclude that both appellants were brought to trial within the 120-day period mandated by Rule 45;[3] we further conclude that the apparent violation of the provisions of Alaska Dist.Ct.R.Crim.P. 1 requiring trial to be set by a judge or magistrate has no bearing on computation of excluded periods for the purpose of Rule 45.

## VAGUENESS

McKenzie and Stanley contend that Chapter 8.16 of the Anchorage Municipal Code, which regulates gambling, is unconstitutionally vague. In *Summers v. Anchorage*, 589 P.2d 863, 866–67 (Alaska 1979), the supreme court set out the three factors which must be considered in determining whether a statute is unconstitutionally vague:

First, a statute may not be so imprecisely drawn and overbroad that it "chills" the exercise of first amendment rights. The second consideration is that in order to be consistent with notions of fundamental fairness a statute must give adequate notice of the conduct that is prohibited. The final element in an analysis of statutory vagueness is whether the statute's imprecise language encourages arbitrary enforcement by allowing prosecuting authorities undue discretion to determine the scope of its prohibitions. [footnotes omitted]

The first question is whether the Anchorage ordinances regulating gambling are overbroad. The overbreadth doctrine was described in *Marks v. City of Anchorage*, 500 P.2d 644, 646 (Alaska 1972):

The overbreadth doctrine has evolved to give adequate breathing room to specific first amendment freedoms; a statute violates the doctrine when constitutionally protected conduct as well as conduct which the state can legitimately regulate are included within the ambit of the statute's prohibition.

McKenzie and Stanley argue that the gambling ordinances, by encompassing friendly private bets, violate the first amendment rights of assembly and free speech. A similar argument was rejected

---

**3.** We are unanimous in concluding that McKenzie's 120-day period began to run on October 14, 1977, the date of his arrest, and that Stanley's 120-day period must be considered to have begun running on the date he was first served with a summons, November 7, 1977. We are further in full agreement that the period from December 30, 1977, through February 12, 1978, is properly excluded as to both appellants under Alaska R.Crim.P. 45(d)(1) by virtue of their motion to dismiss, filed December 30. These conclusions are dispositive as to Stanley since, even assuming all time from February 13 through April 17, 1978, the date of trial, was not subject to any exclusions and ran against the municipality, Stanley was brought to trial within 120 days, allowing for the excluded period attributable to his motion to dismiss.

As to McKenzie, a majority of the court concludes that the period between March 13 and April 4, 1978, is properly excluded under Alaska R.Crim.P. 45(d)(2), since McKenzie moved for and was granted a continuance of the trial date set for March 13. Assuming the period from April 4 to April 17 to be unexcluded, McKenzie was brought to trial on the 118th day after his arrest, allowing for the excluded periods discussed above. Chief Judge Bryner would prefer to rule that, under the provisions of Alaska R.Crim.P. 45(d)(5), McKenzie, having voluntarily consented to joinder of his case with Stanley's case, could properly be tried at any time within the 120-day period allowable for Stanley. Thus, Chief Judge Bryner would find it unnecessary to reach either the issue of exclusion of the period between March 17 and April 4, 1978, or the issue of violation of Alaska Dist.Ct.R.Crim.P. 1.

by the supreme court with respect to ordinances regulating prostitution in *Summers v. Anchorage*, 589 P.2d 863, 867 (Alaska 1979) where the court held the ordinances in question regulated conduct, not speech or association.[4] We believe the same principle applies to gambling ordinances. Speech and association are regulated only to the extent that they involve gambling activities. This is permissible regulation under *Summers*.

■ We note that the definition of gambling under the municipal ordinance is definite and specific.[5] This definition is entirely consistent with traditional definitions of the term. *See State v. Pinball Machines*, 404 P.2d 923, 925–27 (Alaska 1965). *See also* Am.Jur.2d *Gambling* §§ 1–5 (1968). It is beyond dispute that the municipality has an interest in and authority to regulate gambling. *Marvin v. Trout*, 199 U.S. 212, 26 S.Ct. 31, 50 L.Ed. 157 (1905).

■ McKenzie also argues that a newspaper which carries point spreads on games could be prosecuted under the provisions of Anch.Mun.Code § 8.16.010(a) for "advancing gambling activity".[6] We disagree and think that such activity obviously falls outside the scope of the ordinance. We do not view publishing point spreads on games, publishing articles about games on which

people may gamble, or reporting news of gambling activities as being activities which any reasonable person could erroneously construe as falling within the gambling ordinance. For this reason we do not believe the ordinance has any realistic potential for a chilling effect on first amendment freedoms. We therefore conclude the Anchorage gambling ordinances are not overbroad.

■ The next question is whether the gambling ordinances gave adequate notice to McKenzie and Stanley that their conduct was prohibited. In *Larson v. State*, 564 P.2d 365, 372 (Alaska 1977) the court held that:

[a] statute which may be criticized because it fails to give adequate notice of every type of conduct which is prohibited may still be sustained (1) if the offense charged falls squarely within its prohibitions and (2) if a construction may be placed upon the statute so that its reach may be reasonably understood in the future.

The conduct of McKenzie and Stanley was clearly prohibited by the ordinance.[7] McKenzie was charged with advancing gambling activity by accepting bets on football games. Based upon the evidence at trial, the court found that the defendants

4. In *Summers* at 867 the court said:
 The ordinance supporting the convictions of Summers and Kitchen does not threaten first amendment rights. The questioned ordinance seeks to prohibit certain sexual conduct and patterns of sexual relations. Appellants characterize these prohibitions as infringing on first amendment values of free expression and association. The expressive conduct and speech-related terms in the ordinance, however, regulate speech only as an element of prohibited prostitution activities.

5. Anch.Mun.Code § 8.16.010(c) defines gambling as:
 [T]he staking or risking of something of value upon the outcome of a contest of chance or a sporting event, upon an agreement or understanding that someone will receive something of value in the event of a certain outcome. However, "gambling" does not include raffles, bingo and related activities of a bona fide non profit nature conducted under a valid and existing permit issued pursuant to law by the Department of Revenue, State of Alaska. The burden of proving

that the act complained of falls within the latter exception shall be upon the person charged.

6. Anch.Mun.Code § 8.16.010(a) provides:
 *Advance gambling activity.* A person "advances gambling activity" if acting other than as a player, he engages in conduct that materially aids any form of gambling activity. Conduct of this nature includes, but is not limited to, conduct directed toward the creation or establishment of a particular game, contest, scheme, device or activity; the acquisition or maintenance of premises, paraphernalia, equipment or apparatus; the solicitation or inducement of persons to participate; the actual conduct of the playing phases; the arrangement or maintenance of the financial or recording phases; or any other phase of the operation of the activity.

7. *See Summers v. Anchorage*, 589 P.2d 863, 867 (Alaska 1979); *Stock v. State*, 526 P.2d 3, 8 (Alaska 1974).

were involved with a high volume, profitable operation. Stanley was charged with wilfully and knowingly permitting this gambling operation to go on in a bar which he owned and where he held the liquor license.[8] We find that the statute gave clear notice that those activities were not permitted.

The defendants argue that the ordinances are vague because insurance contracts, contingent fee contracts, and working for shares on a fishing boat could be considered gambling. We do not believe that the Anchorage gambling ordinances could be reasonably construed to apply to bona fide business transactions.[9]

 The final factor to be considered is the ordinances' potential for arbitrary enforcement. However, the record of this case does not reflect a history of arbitrary or selective enforcement of the gambling ordinances.[10] We also do not find the language of the ordinances so vague that arbitrary enforcement is likely.[11] We therefore do not invalidate the ordinances for vagueness on this ground.

## EQUAL PROTECTION AND PRIVACY

 McKenzie and Stanley assert that just as an individual has a right to wear his hair long[12] and to possess marijuana for personal use in his own home,[13] he has a right to gamble socially. The contention seems to be that a person has a privacy right which would allow him to gamble socially.[14] The next contention is that if social gambling is allowed, then there is a denial of equal protection of the law by allowing some gambling activity but not other gambling activity, and not differentiating between what is allowed and what is not allowed.

 We do not believe that the defendants have any reasonable expectation of privacy in conducting a gambling operation in a public bar and we therefore find no invasion of the defendants' privacy rights under the Alaska Constitution. *Hilbers v. Municipality of Anchorage*, 611 P.2d 31, 41–43 (Alaska 1980); *Summers v. Anchorage*, 589 P.2d 863, 870 (Alaska 1979). It is clear the municipality has a right to regulate gambling activity much as it has a right to regulate massage parlors and prostitution. It may be that the municipality cannot constitutionally regulate gambling activities such as a small social bet in the privacy of one's home. *See Ravin v. State*, 537 P.2d 494 (Alaska 1975). However we do not feel we need to decide this issue. The gambling involved in this case was not social betting. We do not feel that the gambling ordinances violate the equal protection clause of the Alaska or United States Constitutions merely because the government in some future case might not be able to show a sufficient reason to regulate some gambling activity.

The judgment of the superior court is AFFIRMED.

8. Anch.Mun.Code § 8.16.040 reads as follows:
 *Permitting gambling on own premises.* It is unlawful for any person to knowingly permit gambling on premises owned, rented or occupied by him.

9. If we saw this as a problem we would merely have to place a narrowing construction on the statute. *See* AS 11.66.280; *Summers v. Anchorage*, 589 P.2d 863, 867 (Alaska 1979); *Larson v. State*, 564 P.2d 365, 372 (Alaska 1977); and *Stock v. State*, 526 P.2d 3, 8 (Alaska 1974).

10. *See Summers v. Anchorage*, 589 P.2d at 868. The fact that people in many bars may conduct gambling games but have not been prosecuted does not by itself establish a pattern of arbitrary enforcement.

11. *See Brown v. Municipality of Anchorage*, 584 P.2d 35 (Alaska 1978).

12. *Breese v. Smith*, 501 P.2d 159 (Alaska 1972).

13. *Ravin v. State*, 537 P.2d 494 (Alaska 1975).

14. *See* Alaska Const. art. 1 § 22.