Diane OYOGHOK, Appellant,

v.

**MUNICIPALITY OF ANCHORAGE,**
Appellee.

No. 5465.

Court of Appeals of Alaska.

March 25, 1982.

Deborah Paquette, Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for appellant.

David G. Berry, Municipal Pros., and Theodore D. Berns, Municipal Atty., Anchorage, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Diane Oyoghok pled *nolo contendere* on June 28, 1978, to two counts of soliciting for prostitution; she was given two sixty-day concurrent suspended sentences and placed on probation for a period of one year. As a special condition of her probation, Oyoghok was prohibited from being within a two-block radius of Fourth Avenue and C Street in downtown Anchorage. At least one of Oyoghok's convictions was for an offense committed in the immediate vicinity of this intersection,[1] an area known for street prostitution.

Oyoghok was observed near the intersection of Fourth Avenue and C Street on a number of occasions following her conviction, in disregard of the special condition of her probation. On four separate dates, Oyoghok was seen either standing at the corner of Fourth Avenue and C Street or on the sidewalk on the south side of Fourth Avenue, within a half-block of C Street. All of the sightings were during evening hours; on two of the four occasions Oyoghok was seen making contact with male pedestrians; on another, she was arrested for soliciting for prostitution.

As a result of these incidents, Oyoghok's probation was revoked, and the district court imposed concurrent sentences of thirty days' imprisonment upon revocation. The revocation of Oyoghok's probation was affirmed on appeal to the superior court; thereafter, Oyoghok filed this appeal. She argues that the area restriction imposed by the district court as a special condition of

her probation was invalid because it was not reasonably related to the purposes of her probation and because it was unconstitutionally vague and overbroad.

Oyoghok's challenge to the restriction imposed by the district court on the grounds that it was unconstitutionally vague and overbroad must be reviewed in terms of the three-fold analysis described in *McKenzie v. Municipality of Anchorage*, 631 P.2d 514, 516 (Alaska App. 1981).

 We first consider the issue of overbreadth: whether the challenged condition was so broadly or imprecisely drawn as to chill the exercise of first amendment rights by Oyoghok or others similarly situated. We begin by noting that the special condition challenged by Oyoghok does not on its face restrict her first amendment rights to freedom of speech or of association with others. Instead, it plainly regulates her conduct, requiring her to stay out of a discrete area in which Anchorage's street prostitution is concentrated. Because the challenged condition of probation regulates conduct, rather than speech or association, and because we believe that the conduct regulated falls within the realm of the municipality's legitimate interest and authority, the restriction cannot be deemed *per se* suspect or invalid. *Summers v. Anchorage*, 589 P.2d 863, 867 (Alaska 1979); *McKenzie v. Municipality of Anchorage*, 631 P.2d at 516–17.

We recognize that, especially to the extent that the challenged condition might have been more narrowly drawn, there is a possibility that it might have unduly restricted the legitimate exercise of first amendment rights incidental to the conduct regulated by the condition. However, under the circumstances presented, two factors militate against a finding of any actual chilling effect on the exercise of first amendment rights.

---

1. Oyoghok's first offense was committed on April 13, 1978, and involved her solicitation of a police officer for an act of prostitution that was to occur at the Mush-Inn Motel. The Mush-Inn is more than two blocks from the intersection of Fourth Avenue and C Street, but

it is unclear from the record where Oyoghok committed the act of solicitation. Her second offense, committed on May 13, 1978, involved an act of solicitation occurring on Fourth Avenue, between C and D Streets.

First, there is no indication in the record that the broad terms of the challenged restriction had any significant impact on the exercise by Oyoghok herself of any protected first amendment freedom. Oyoghok has not asserted she resided or was lawfully employed within the restricted area. There is nothing to indicate that any of the legitimate businesses or public facilities in the area were actually used by her, or that the services which they provided would not have been available to her elsewhere in Anchorage. Neither is there anything to show that it was necessary for Oyoghok to travel through the restricted area in the course of her normal, lawful activities.[2]

Second, we note that, unlike most cases involving claims of unconstitutional overbreadth, this case deals with a special condition of probation applicable only to Oyoghok, and not with a statute or ordinance applicable to a certain group or class of individuals or to the general public. Consequently, the potential for a chilling effect on the exercise of first amendment freedoms by others as a result of the broad terms of the restriction in this case is virtually non-existent. The restrictive condition in this case applied to Oyoghok, and to her alone.[3]

We thus conclude that Oyoghok has failed to make a sufficient showing that the broad scope of the challenged condition in this case had any realistic impact in chilling her own exercise of protected first amendment rights, and that the condition could not have resulted in a chilling effect on the conduct of other individuals in the community. Accordingly, we hold that the challenged condition is not unconstitutionally overbroad.

■ We must next consider whether the terms of the challenged restriction in this case were so vague as to deprive Oyoghok of fair notice as to what conduct on her part was prohibited. Our consideration of this facet of Oyoghok's constitutional challenge is squarely governed by the Alaska Supreme Court's holding in *Stock v. State*, 526 P.2d 3, 9–10 (Alaska 1974). While the terminology used by the district court to describe the area of restriction in this case —"within two blocks of the intersection of Fourth Avenue and C Street"—may have been imprecise and ambiguous in the outer limits of its coverage, we conclude that

2. These factors serve to distinguish this case from the situation considered by the California Court of Appeals in the case of *In re White*, 97 Cal.App.3d 141, 158 Cal.Rptr. 562 (1979). In *White*, the court held a similar geographic restriction to be invalid. There, the record established that the defendant, by virtue of the limitation imposed, was required to change her residence, that she was actually impaired in the legitimate use of public facilities directly adjacent to the area of restriction, and that the area of restriction encompassed the city's only Greyhound bus depot. We think these distinctions are significant.

We further note that, in rendering its decision, the court in *White* relied, in part, on a conclusion that the defendant had a right to intrastate travel under the California Constitution and that the challenged restriction impinged upon her exercise of that right. In arguing the existence of a similar right to intrastate travel in Alaska, Oyoghok has failed to demonstrate that the special condition imposed against her actually impaired her ability to travel or discouraged her from travelling, and we therefore do not decide the issue.

3. It is uncontested that the type of restriction imposed upon Oyoghok is commonly imposed against other persons convicted of similar offenses occurring in the same area of Anchorage. However, any potential chilling effect on a person other than Oyoghok resulting from use of a restriction such as the one here would arise from the specific restriction imposed against that person, and not from use of the condition in Oyoghok's case. Other persons convicted of offenses similar to Oyoghok's whose first amendment freedoms might actually be impaired by the imposition of a restriction as broad as that imposed in this case could, of course, seek an appropriate narrowing of the condition to suit their circumstances. Our holding is limited to the particular facts of this case, and we do not imply that we would reach a similar result in a case in which a condition as broad as the one in this case was imposed against a person whose first amendment rights were demonstrably affected thereby. By virtue of their limited applicability to individual probationers, conditions of probation, unlike statutes, are not realistically amenable to overbreadth challenges based on facial unconstitutionality; rather, such challenges must be considered as applied to the particular circumstances of each case.

Oyoghok's conduct fell within the "hard core" of the restriction, an area within which any ordinary person would doubtless know that the restriction applied. *Id.*

■ Finally, we must consider whether the imprecise terminology of the challenged restriction rendered it so vague that it encouraged arbitrary enforcement. In order to prevail on this basis, Oyoghok is required to do more than merely allege that arbitrary enforcement might result from the imprecise language of the challenged condition. Cases addressing this facet of the vagueness argument have consistently required that a background or history of arbitrary enforcement be demonstrated. *Summers v. Anchorage*, 589 P.2d at 868; *McKenzie v. Municipality of Anchorage*, 631 P.2d at 518. No such showing has been made here. Thus, we find no basis for concluding that ambiguity of the challenged condition impermissibly invited arbitrary enforcement.

Oyoghok has separately argued that the special condition of probation imposed against her was not reasonably related to the purposes of her probation because it was unnecessarily broad. This argument is quite similar to Oyoghok's claim that the challenged condition was unconstitutionally overbroad. It is contended that the geographic area encompassed by the challenged condition was too large and included many legitimate businesses and public facilities; that application of the restriction should reasonably have been limited to nighttime hours, when street prostitution is commonly practiced; and that provision should have been made in the condition to permit Oyoghok to travel through the restricted area for lawful purposes.

■ In assessing Oyoghok's claim, we must determine whether the challenged condition of probation was reasonably relat-

ed to the goal of her rehabilitation and whether it was unduly restrictive of her liberty. *Sprague v. State*, 590 P.2d 410, 417 (Alaska 1979). *See also Roman v. State*, 570 P.2d 1235 (Alaska 1977). While we believe Oyoghok's arguments have a good deal of merit when viewed in the abstract,[4] we do not think they are persuasive under the circumstances of this case. All of Oyoghok's violations occurred at night, in the virtual epicenter of the proscribed area. These incidents were unrelated to travel by Oyoghok through the area or to her use of stores, restaurants, or offices in the vicinity. At no point has Oyoghok contended that she was lawfully employed or seeking employment in this area, nor does it appear from the record that Oyoghok resided in the restricted area or had any legitimate need to visit or travel through it.

Given these circumstances, we need not deal with the question whether the challenged restriction was, in the abstract, too broad. As applied to Oyoghok, the special condition of probation imposed by the district court was reasonably related to achieving her rehabilitation. The record establishes that the area in the immediate vicinity of Fourth Avenue and C Street is the primary, if not the only, area of street prostitution within the City of Anchorage. Oyoghok's convictions resulted from offenses involving street prostitution. Moreover, there has been no showing that the special condition unduly impinged upon Oyoghok's liberty. We do not believe that Oyoghok can properly complain that the challenged restriction would have been unduly restrictive in other contexts, or as applied to other defendants. Under the terms of *Sprague* and *Roman*, our determination of the reasonableness of the challenged condition must be confined to Oyoghok's own situation. We conclude that the challenged

---

4. We encourage judges who impose area restrictions similar to those in Oyoghok's case to consider the standards set forth in *Sprague v. State* and *Roman v. State*, as well as the need to define the area of restriction with specificity. Accordingly, in future cases, efforts should be made to define the area of restriction with specificity and to limit the area so that it is not unnecessarily broad. In addition, consideration should be given to the needs of individual probationers, and provision should be made to allow for lawful travel through the area of restriction and for access to the area for legitimate purposes and at reasonable times, when the need for such access exists.

condition of probation was not unreasonable in Oyoghok's case.

Accordingly, the superior court's judgment affirming the judgment of the district court is AFFIRMED.

SINGLETON, Judge, concurring.

While I agree with the result reached by the majority, I fear that the approach taken unduly dignifies Ms. Oyoghok's constitutional arguments, and in so doing, obscures the issue in this case.

A probationer has a statutory and common law right to be free of any condition of probation not reasonably related to her rehabilitation. *Tiedeman v. State*, 576 P.2d 114, 116 (Alaska 1978). To the extent that a condition is unnecessarily severe or restrictive, it violates the *Tiedeman* rule. By the same token, to effectively aid in rehabilitation, a condition of probation must be intelligible; Ms. Oyoghok cannot be expected to follow a condition of probation she cannot understand.

I believe these principles dispose of this case. Given the majority's treatment of Ms. Oyoghok's complaints, it is clear that in any case in which the court would invalidate a probation condition on the basis of one of her constitutional claims, it would as readily invalidate the condition under the *Tiedeman* rule. Conversely, so long as the condition of probation was reasonably necessary for rehabilitation, it would not be invalidated on the basis of any of Ms. Oyoghok's constitutional complaints. This is not to say that a reasonably necessary probation condition could not violate some provision of the state or federal constitution; it is only to say that it could not, under the majority's analysis, violate the constitutional provisions relied upon by Ms. Oyoghok.

For this reason, I do not agree with the implication in the majority opinion that some probation conditions might be unconstitutionally overbroad. "Overbreadth" is a term of art that the United States Supreme Court uses to explain an exception to the general rule that only a person whose constitutional rights are violated by a statute has standing to challenge the constitutional validity of that statute. The Supreme Court explained why it established such an exception in *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830, 840–41 (1973), where the court said:

> Litigants ... are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or association.

By its nature, a probation condition affects only the named probationer, and she has a substantial incentive to seek clarification of uncertain conditions and modifications of unnecessarily severe conditions at the time they are imposed. Hence, there is no justification for an overbreadth doctrine regarding probation conditions. A probationer should not be given standing to question the propriety of a probation condition as it might be applied to someone other than herself.

By the same token, the claim that a probation condition violates a constitutional right to intrastate, or in this case intracity travel, is untenable. Execution aside, there is no greater restriction on travel than imprisonment. If violation of a law could, consistent with the constitution, result in imprisonment, it can constitutionally result in restrictions on movement less severe. If such a condition is invalid, it is because it is not reasonably necessary to effectuate rehabilitation, not because it infringes on intrastate travel.