NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

# IN THE COURT OF APPEALS OF THE STATE OF ALASKA

DORENE LORENZ,

                    Appellant,

        v.

CITY AND BOROUGH OF JUNEAU,

                    Appellee.

Court of Appeals No. A-14345
Trial Court Nos. 1JU-23-01122 MO &
1JU-23-01123 MO

O P I N I O N

No. 2812 — August 1, 2025

Appeal from the District Court, First Judicial District, Juneau, Peggy McCoy, Magistrate Judge.

Appearances: Dorene M. Lorenz, *in propria persona*, Juneau, Appellant. Clinton Mitchell, Assistant Municipal Attorney, and Robert Palmer III, Municipal Attorney, City and Borough of Juneau, for the Appellee.

Before: Wollenberg, Harbison, and Terrell, Judges.

Judge WOLLENBERG.

Dorene Lorenz appeals the district court's order convicting her of two infractions under the City and Borough of Juneau (CBJ) Code provision prohibiting nuisance barking.[1] In August 2023, Juneau Animal Control served two citations on

---

[1] Under City and Borough of Juneau Code of Ordinances 08.45.010(a)(1) ("Objectionable animals"), the "keeper of an animal shall . . . [p]revent the animal from

Lorenz for nuisance barking by her two dogs on August 16, 19, and 24. The two citations — one for each dog — alleged that Lorenz's dogs barked frequently and for prolonged periods on the specified dates in violation of the CBJ ordinance.

Lorenz requested a trial on the two citations, and a bench trial was held before a magistrate judge. In a subsequent written order, the court found that Lorenz had committed both infractions.

On appeal, Lorenz raises several claims of error. Lorenz argues that her due process rights were violated when she was prohibited from presenting evidence, cross-examining witnesses, and giving an opening statement or closing argument. She also contends that the district court improperly denied her motion to compel discovery. Finally, Lorenz argues that the CBJ nuisance barking ordinance is so vague that it fails to provide adequate notice as to what conduct is prohibited and encourages arbitrary enforcement.[2]

The CBJ contests several of Lorenz's claims but agrees that the court likely erred in denying Lorenz the opportunity to introduce certain video evidence. In addition, with respect to Lorenz's vagueness claim, the CBJ argues that the ordinance is not vague if interpreted to incorporate a "reasonable person" standard, but acknowledges that the court's order is unclear as to whether it properly applied this standard and that a remand may be appropriate.

We agree that Lorenz's case must be remanded for these two reasons and others, as discussed in this opinion. We therefore vacate Lorenz's minor offense convictions and remand for further proceedings.

---

disturbing a neighborhood or any number of persons by frequent or prolonged noise, barking, howling or other noises." A violation of CBJ 08.45.010(a)(1) is an infraction. *See* CBJ 08.50.030(a).

[2]    Lorenz also argues that she was treated in an "arbitrary and capricious manner" by the district court. But this argument appears to reiterate her other claims about the interpretation of the CBJ ordinance and other procedural errors.

*Factual background and proceedings*

On August 24, 2023, Officer Karen Wood of Juneau Animal Rescue's animal control and protection unit (Juneau Animal Control) issued two citations against Lorenz for nuisance barking by her two dogs on August 16, 19, and 24. Wood was the primary point of contact for Lorenz and her neighbors, and represented the CBJ at Lorenz's trial. Two of Lorenz's neighbors, Andrea Dewees and Ryan Bellmore, were the complainants and the CBJ's witnesses at trial. Lorenz represented herself throughout her trial and in this appeal.

Lorenz pleaded not guilty to the minor offense charges and requested a trial. On November 5, 2023, the court sent Lorenz a notice of hearing for her trial. This notice informed Lorenz that, among other things, she had the "right to confront and question the witnesses against" her and that she could "present evidence" so long as it was "ready at the time of trial."[3]

On November 9, Lorenz sent the CBJ a request for discovery.[4] Lorenz requested that the CBJ provide "any written or recorded statements or summaries of statements" made by persons whom the CBJ identified as witnesses or otherwise knowledgeable about the case. She also requested that the CBJ produce any exculpatory evidence as well as all documentation of prior complaints made to the CBJ about her, including complaints unrelated to dog barking. Later that day, Wood emailed Lorenz a copy of her "activity card," in which Wood logged her interactions with Bellmore and Dewees. Lorenz responded with a request that Wood produce the "bark logs" and videos that were provided to Wood by Bellmore and referenced in Wood's activity card.

---

[3] The trial was originally scheduled for December 20, 2023, but it was continued until January 3, 2024, upon the CBJ's motion.

[4] Lorenz styled this document as a "set of interrogatories and request for production."

In late November, Wood sent Lorenz a copy of Bellmore's videos.[5] (A dispute remained as to whether Wood provided Lorenz with the bark log, which we will discuss later.)

On December 14, Lorenz filed a motion to compel, arguing that the CBJ had not fulfilled its discovery obligations. That day, Wood sent Lorenz a copy of a video taken by Dewees — a fifteen-second video Dewees recorded on August 16, which was later admitted into evidence and played at trial. On December 18, the CBJ sent Lorenz its exhibit and witness lists.[6]

The CBJ then filed its response to Lorenz's motion to compel, stating that it had fulfilled its discovery obligations and that Lorenz had received "all relevant evidence." (Wood represented that she had sent Bellmore's bark log to Lorenz on November 9.)

Lorenz's trial was held before a magistrate judge. The court began by advising Lorenz of several of her rights, including her right to remain silent and to cross-examine the CBJ's witnesses. The court did not specifically advise Lorenz of her right to present evidence. Because the CBJ was represented by Officer Wood, a non-attorney, the court also advised the parties that Wood would not be allowed to question witnesses, make an opening statement or closing argument, or otherwise act as an attorney.[7]

---

[5]   Bellmore's videos — which covered certain periods on each of the three days the CBJ alleged that Lorenz's dogs engaged in prolonged barking (August 16, 19, and 24) — were not played at trial or admitted into evidence.

[6]   The CBJ listed Dewees and Bellmore as its witnesses and listed their videos as its only exhibits.

[7]   *See* Alaska R. Minor Offense P. 12(a) (providing that a municipality may be represented in a minor offense case by the officer who issued the citation, who may give testimony, offer exhibits, and call witnesses, but "may not examine witnesses, make opening and closing arguments, or otherwise act as an attorney").

Officer Wood testified and called Dewees and Bellmore as witnesses. In her defense, Lorenz testified and called Kim Nelson (her houseguest on the dates in question) as a witness.

Officer Wood testified that she cited Lorenz because Lorenz's dogs' barking "disturb[ed] [her] neighbors" and that she relied on the neighbors' emails and bark log as the basis for her citations for nuisance barking on August 16, 19, and 24. Wood explained that a "bark log" is a document used to track the times, dates, and duration of barking over a five- to ten-day period; Juneau Animal Control relies on a complainant's bark logs when its employees do not hear the barking firsthand.

Wood testified that Bellmore emailed her his complaints and submitted a bark log; Wood reached out to Lorenz over email about the complaints but did not receive a timely response. The court did not ask Lorenz if she had any questions for Wood, and Lorenz did not cross-examine Wood.

Dewees testified next. Notwithstanding the court's earlier advisement that Wood would not be permitted to question witnesses (consistent with Alaska Minor Offense Rule 12(a)), Wood examined Dewees. Dewees testified that she heard "frequent and prolonged" barking on August 16, and Wood played a fifteen-second video that Dewees had recorded that night. In the video, dogs can be heard barking, and Lorenz is visible through her window, but no dogs are visible. Dewees testified that the barking prevents her from sleeping on the side of her house closest to Lorenz's property and keeps her awake later than she would prefer. The court asked Lorenz if she had any questions for the witness, and Lorenz proceeded to cross-examine Dewees.[8]

---

[8] Lorenz sought to ask Dewees whether Dewees had filed other complaints against her, including those unrelated to dog barking. The court interjected, stating that any other problems between Lorenz and Dewees were not relevant to whether Lorenz's dogs were barking. Lorenz responded that the parties' other disputes were relevant to showing that her neighbors were using the complaint process to try to drive her from the neighborhood.

We agree with Lorenz that evidence of other complaints could potentially be relevant — for example, to issues of motive or credibility — and that a court must be

Once Dewees was dismissed, the court advised the parties that the proceeding was taking "longer than we generally expect for these trials" and so the court was going to "try to speed things along." The court asked Wood's other witness, Bellmore, to stand up and testify, seemingly from the gallery. The court asked Bellmore whether his testimony was substantially the same as Dewees's; he stated that it was, but that he had submitted information for two additional dates (August 19 and 24).

Wood offered to provide Bellmore's seven video clips and bark log. The court stated that it was "not going to ask you to play the video clips," but asked Bellmore to confirm that the videos contained audio of the dogs barking and then directed him to have a seat. Bellmore's videos were therefore not admitted by the court, and there is little evidence in the record about the alleged barking on August 19 and 24. The court did not ask Lorenz if she had any questions for Bellmore, and Lorenz did not cross-examine Bellmore.

Lorenz called Kim Nelson to testify. When Lorenz asked preliminary questions to establish Nelson's relationship to the case, the court directed Lorenz to "jump to how this is relevant to the dogs" because time was running short. Nelson testified that she and her own two dogs lived with Lorenz in August 2023. The dogs

"particularly solicitous toward cross-examination that is intended to reveal bias, prejudice, or motive to testify falsely." *Cleveland v. State*, 258 P.3d 878, 884 (Alaska App. 2011) (quoting *Wood v. State*, 837 P.2d 743, 745 (Alaska App. 1992)). At the same time, the court has "wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." *Id.* (second alteration in original) (quoting *Wood*, 837 P.2d at 746-47); *see also Johnson v. State*, 889 P.2d 1076, 1080 (Alaska App. 1995) (stating that the scope of cross-examination is generally within the trial court's discretion, but that the court abuses its discretion "when the jury fails to receive adequate information to allow it to understand and evaluate fairly a witness'[s] potential bias, prejudice, or motive"). Here, it is not clear that the district court understood Lorenz to be arguing that the other complaints were relevant to Dewees's potential bias or motive. Moreover, Lorenz did not make a specific proffer about other complaints made by Dewees. The trial record therefore contains no information about the additional complaints Lorenz was referencing.

had "free range" to go in and out of the backyard through the dog door. Although the dogs barked, Nelson testified that they did so when "provoked" by other dogs or children and did not bark "excessive[ly]" or any more than other dogs in the neighborhood.

With respect to August 19, Nelson testified that she, Lorenz, and all of their dogs had gone to the beach that evening and were not in the house during the time period relevant to Bellmore's complaint (presumably as reflected on Wood's activity card, since Bellmore did not testify at trial to specific times that the dogs barked on August 19, and his videos were not introduced).

With respect to August 24, Nelson testified that she was watching Lorenz's dogs while Lorenz was out of town and, during that time, the dogs "did not bark profusely."

The court then asked Lorenz whether she wished to testify. In response, Lorenz asked, "Could I just show the video, Your Honor?" Lorenz sought to play a five-minute video from August 16 that she alleged would refute the neighbors' complaints as to that day. The court denied Lorenz's request because "we really don't have time for more videos" and Lorenz had "not provided [the video] to the city in advance." The court directed Lorenz (if she wished to testify) to give her testimony, which could include a description of the video's contents.

Lorenz testified that she had collected videos that were recorded by the Ring camera in her backyard. She testified that the five-minute clip from August 16 would show that her dogs were provoked to bark when other neighborhood dogs began barking and that, shortly after her dogs started barking, she brought them into her house from the backyard. Lorenz testified that the video showed that her dogs were inside during the period Bellmore alleged they were barking.[9]

---

[9] Lorenz also testified that she had time-stamped photographs from August 19 showing all four dogs in the car before they went to the beach.

Lorenz also offered to provide the court with a full day of footage for each of the days in question. She testified that the footage demonstrated that her dogs were not the ones barking; according to Lorenz, because the Ring camera modulates its audio when the sound is near, one can tell whether a given bark is coming from Lorenz's dogs or from other dogs in the neighborhood.

Wood requested that, if the court reviewed Lorenz's videos, the court also review Bellmore's videos. The court declined to admit Lorenz's or Bellmore's videos, saying it would "just rely on the testimony that's in front of me."

The court asked Lorenz, "Is there anything else you want me to know this morning?" Lorenz responded, "No, ma'am." At that point, the court indicated it would take the matter under advisement and would relisten to some of the testimony in formulating its ruling. The court then went off record. Lorenz asked whether the court wanted copies of her videos, but the court declined.

(Bellmore's videos are contained in the record on appeal, even though the record from trial and the exhibit list show that the videos were not admitted.)

The court issued a written ruling later that day. The court found that Lorenz had violated the ordinance beyond a reasonable doubt. Although the court credited Lorenz's and Nelson's testimony as to times Lorenz's dogs were not barking, the court found that the CBJ presented credible testimony and evidence that "at times Defendant's dogs disturbed the neighborhood by prolonged barking."[10]

In its order, the court noted that it found the CBJ's "'bark log' evidence particularly helpful." (As we discuss later, the "bark log" does not appear to have been admitted as evidence and is not in the record on appeal.)

_____

[10] The court also observed that Lorenz's "testimony about other neighborhood dogs is relevant to whether other citations also might be issued but not to the question of [Lorenz's] dogs' behavior." We note that Lorenz's testimony about the barking of other neighborhood dogs appeared intended, at least in part, to show that the CBJ had not proven that *her* dogs, as opposed to others, were the ones barking excessively and disturbing the neighbors.

With respect to the parties' proffered video recordings, the court observed that it found such videos "of little assistance because they demonstrate only short time periods." The court added that "[e]ither party no doubt could provide video or audio supporting either position. To be meaningful in this case, a recording would have to be 'prolonged[.]'" The court did not acknowledge that Lorenz had offered to provide full-day videos from August 16, 19, and 24.

Lorenz now appeals, raising several claims.

*Lorenz's claim regarding her video evidence*

Lorenz argues that the court abused its discretion when it precluded her from introducing video evidence to rebut the CBJ's evidence. As we noted above, the CBJ concedes that the district court's failure to allow Lorenz to present potentially exculpatory evidence was likely an abuse of discretion.[11]

At trial, Lorenz attempted to introduce videos that would show her backyard and her dogs' activities on the dates in question. Lorenz testified that the videos showed that, on the dates for which she was cited, other dogs in the neighborhood were barking, but her dogs either were not barking or were provoked by other neighborhood dogs barking. According to Lorenz, these videos included twenty-four hours of footage (captured by her Ring camera) from each of the three days on which her dogs were alleged to have engaged in nuisance barking, as well as a five-minute snippet from August 16 captured minutes before a video taken by one of her neighbors, Bellmore.

The district court declined to review or admit any of Lorenz's proffered videos, even though it had already admitted the August 16 video recorded by Dewees. As we noted earlier, the court stated that Lorenz was required to provide her evidence

---

[11] *See State v. Sharpe*, 435 P.3d 887, 892 (Alaska 2019) (recognizing that we generally review a trial court's decision to admit or exclude evidence for an abuse of discretion).

to the CBJ in advance of trial but had failed to do so. The court also expressed concern that the trial was taking longer than expected, stating, "We really don't have time for more videos."

We agree with the parties that the court's categorical refusal to consider Lorenz's video evidence was an abuse of discretion requiring a remand.[12]

First, it is unclear what rule the court was referencing in requiring Lorenz to provide the CBJ with her evidence in advance of trial. While a minor offense case like this one is not a criminal case, it is a quasi-criminal case.[13] As the Alaska Supreme Court has explained, quasi-criminal offenses like minor offenses "are criminal rather than civil in nature" and thus are "enforced and adjudicated using criminal procedures" (with two major notable exceptions: there is no right to court-appointed counsel and no right to a jury trial).[14] The legislature codified this holding in AS 12.80.040, which

---

[12] Lorenz argues that the district court's evidentiary rulings violated her due process rights because they impeded her ability to present her defense. *See Smithart v. State*, 988 P.2d 583, 586 (Alaska 1999); *Sanders v. State*, 364 P.3d 412, 422 (Alaska 2015). Because we conclude that the court's rulings were an abuse of discretion and were not harmless, we need not reach Lorenz's constitutional claim. *See Keith v. State*, 612 P.2d 977, 982-83 (Alaska 1980) ("[W]e need not determine whether [the defendant's] due process rights [to present a defense] were violated, since we have determined that the superior court abused its discretion in excluding this evidence.").

[13] *State v. Dutch Harbor Seafoods, Ltd.*, 965 P.2d 738, 745 (Alaska 1998) (stating that "the term 'quasi-criminal' encompasses minor offenses which are criminal rather than civil in nature but do not meet the *Baker* test for the right to jury trial"); *see also Baker v. City of Fairbanks*, 471 P.2d 386, 402 (Alaska 1970).

[14] *Dutch Harbor Seafoods*, 965 P.2d at 745-46 (holding that strict liability commercial fishing violations are "minor criminal offenses in substance and are to be enforced and adjudicated using criminal procedures," even though there is no right to a jury trial or to court-appointed counsel); *see also State v. Euteneier*, 31 P.3d 111, 113 (Alaska App. 2001) (concluding that violations set out in Title 4 of the Alaska Statutes, like the traffic infractions in Title 28 and the fish and game violations in Title 16, are "a class of quasi-criminal offenses which, while they are not serious, are to be disposed of within the criminal justice system" and "enforced by traditional criminal procedures" (quoting *State v. Clayton*, 584 P.2d 1111, 1114 (Alaska 1978))).

provides that, with these two exceptions, "all laws of the state relating to misdemeanors apply to violations and infractions."[15]

Discovery in criminal cases is governed by Alaska Criminal Rule 16,[16] and as a general matter, in criminal cases, a defendant cannot be compelled to provide pretrial discovery to the prosecution.[17]

Consistent with this rule, the notice of hearing that Lorenz received prior to trial expressly advised her that she "may present evidence" at trial and that her "witnesses, documents, photographs, and/or vidoes [*sic*] must be ready *at the time of trial*." (Emphasis added.) Lorenz acted consistently with the rights advisement provided to her in advance of trial.

Second, the district court ruled that there was insufficient time left in the trial to play any of Lorenz's videos, but as the CBJ recognizes, the possibility that

---

[15] *See Dutch Harbor Seafoods*, 965 P.2d at 744 n.12 (noting that, in AS 12.80.040, the legislature codified the holding from *Clayton*, 584 P.2d at 1115, that infractions are quasi-criminal in nature and governed by criminal procedures).

[16] The Alaska Minor Offense Rules clearly exempt minor offense prosecutions from the application of some of the criminal rules. *See, e.g.*, Alaska R. Minor Offense P. 9(d) ("The court shall not issue a bench warrant for failure to respond or appear or for failure to satisfy the judgment in a minor offense case."). But there is no exemption for Criminal Rule 16, and there is no other discovery provision in the minor offense rules which would supersede Criminal Rule 16. In fact, we have previously applied Criminal Rule 16 in the minor offense context. *See, e.g.*, *Shortridge v. State*, 2013 WL 3322297, at *3-4 (Alaska App. June 26, 2013) (unpublished) (applying Criminal Rule 16 in the context of a traffic infraction); *Rodes v. City of Kenai*, 1996 WL 33686482, at *4 (Alaska App. Feb. 21, 1996) (unpublished) (applying Criminal Rule 16 in the context of city offense for leaving nonoperating vehicle on property).

[17] *Scott v. State*, 519 P.2d 774, 785 (Alaska 1974); *see also State v. Summerville*, 948 P.2d 469, 470 (Alaska 1997) (per curiam) (holding that an amendment to the Alaska Criminal Rules requiring reciprocal discovery violated the Alaska Constitution's privilege against self-incrimination). *But see* Alaska R. Crim. P. 16(c) (providing the narrow circumstances in which a criminal defendant must make pretrial disclosures to the prosecution).

Lorenz's video evidence may have contained exculpatory evidence entitled her to a closer review by the court. The trial was scheduled for forty-five minutes. Approximately twenty minutes into the trial, the court noted that the trial was taking longer than expected for a minor offense case and stated that it was going to try to speed things up. As a result, the court precluded Lorenz from presenting her video evidence, even though one of these videos (the five-minute video) corresponded to the same date (August 16) from which the CBJ was permitted to play a video recorded by one of Lorenz's neighbors. (The court also declined to admit the videos taken by Bellmore, which related to the other two dates at issue, August 19 and August 24, and Lorenz was similarly precluded from presenting videos taken on those dates.)

After trial, the court issued written findings that "it consider[ed] video and audio recordings of little assistance because they demonstrate only short time periods." The court determined that "[t]o be meaningful in this case, a recording would have to be 'prolonged'" and that "credible witness testimony [was] a much more efficient use of the court's time."

But these findings are problematic. As an initial matter, the court did not review any of Lorenz's video evidence prior to ruling that the recordings would provide little assistance. Lorenz offered the court a relatively short sample of her video evidence. In seeking to submit a video clip from August 16, Lorenz explained that the video was only five minutes long and would rebut some of the videos offered by Bellmore (though the court also declined to admit Bellmore's videos). The court nevertheless declined to review even this short sample before finding that the evidence had little probative value.

Moreover, Lorenz informed the court that she had extended video footage for all three days at issue and that this footage showed that her dogs were not barking in an excessive manner. It therefore appears that Lorenz offered to provide "prolonged" recordings for all three days at issue — the kind of evidence the court found would have been "meaningful" — and the court still denied Lorenz's request to admit this evidence.

Whether, and to what extent, Lorenz's dogs were barking was the central issue in the case. And the videos contained potentially probative evidence on this issue. For example, Lorenz testified that the video showed that her dogs were inside during the period on August 16 that they were alleged to be barking. Lorenz also testified that the footage from August 24 showed that her dogs did not bark excessively.

We therefore conclude that the district court erred in declining to consider Lorenz's proffered video evidence.[18] And given the centrality of this issue and the high potential probative value of the videos, we cannot say that this error did not appreciably affect the verdict.[19] We therefore agree with the parties that resolution of this issue requires a remand to the district court to evaluate Lorenz's proposed evidence consistent with this opinion.[20]

We recognize that minor offense trials are intended to be streamlined procedures and that there is a need for some flexibility.[21] We do not mean to suggest that the court was required to watch the entirety of Lorenz's proffered seventy-two hours of video evidence. But the court could not blanketly preclude Lorenz from presenting relevant video evidence in the name of administrative expediency,

---

[18] *See Wasserman v. Bartholomew*, 923 P.2d 806, 814 (Alaska 1996) (recognizing that excluding evidence under Evidence Rule 403 on the grounds of "waste of time" and "undue delay," when the evidence pertains to the central issue at trial, "is rarely within the trial court's discretion").

[19] *See Hunter v. State*, 307 P.3d 8, 17 & n.13 (Alaska App. 2013). We note that the district court declined to accept Lorenz's videos, so they are not in the record before us.

[20] *See Sykes v. Melba Creek Mining, Inc.*, 952 P.2d 1164, 1170-71 (Alaska 1998) (explaining that because the case was tried before the trial court without a jury, a new trial was not necessary, and remanding for the court to reconsider its ruling after taking testimony from the witnesses it erroneously precluded).

[21] Alaska R. Minor Offense P. 1 (recognizing that the Minor Offense Rules "are intended to provide for the just determination of these cases and to that effect shall be construed to secure simplicity and uniformity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay").

particularly after admitting video evidence for the same time period submitted by the CBJ.

For example, the court could have taken steps to protect Lorenz's right to present evidence while avoiding undue delay by ensuring that Lorenz's video exhibits were tailored to the specific allegations being made in this case.[22] We note that, at trial, the CBJ was not clear precisely what times on the three dates in question Lorenz's dogs were alleged to be in violation of the CBJ's nuisance barking ordinance. The original charging documents stated only that Lorenz's dogs were "barking frequently and for prolonged periods of time" on various dates "such as 8/16/23, 8/19/23 and 8/24/23." Wood's activity card includes more specific times — namely, it refers to an email from Wood to Lorenz stating that one of her neighbors had complained about excessive barking "on 8/16 from 6:30pm to past 10pm and on 8/19 from 6:15pm until 10pm." But while the activity card is in the record, it was not introduced at trial. In fact, the CBJ presented little evidence about August 19 and August 24 because the court also largely limited Bellmore's testimony.

In order for Lorenz to provide only the portions of the videos that are relevant to the allegations, the court should require the CBJ to provide the specific times on August 16, 19, and 24, 2023 that Lorenz's dogs were alleged to be in violation of the nuisance barking ordinance. The court would then be entitled to allow Wood, on behalf of the CBJ, to introduce Bellmore's video evidence in rebuttal, as Wood requested.

---

[22] *See* Alaska R. Evid. 611(a) (providing that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to," *inter alia*, "make the interrogation and presentation effective for the ascertainment of the truth" and "avoid needless consumption of time").

*Lorenz's claims regarding cross-examination*

Lorenz argues that the court violated her due process rights when she was not permitted to cross-examine two of the CBJ's witnesses.[23] In the notice of hearing issued prior to trial, the court informed Lorenz, "You have the right to confront and question the witnesses against you."[24] Then, at the beginning of the trial, the court advised the parties that Lorenz would have the opportunity to question the CBJ's witnesses.

The record indicates that, while Lorenz was afforded an opportunity to cross-examine Dewees, she was not provided with an opportunity to cross-examine Officer Wood or Bellmore (whose testimony was itself curtailed). The CBJ argues that it is unclear whether Lorenz was prevented from cross-examining Officer Wood and Bellmore or whether she chose not to cross-examine them. But while the district court asked Lorenz whether she had any questions for Dewees, the court did not ask this same

---

[23] *See, e.g.*, *Thorne v. Dep't of Pub. Safety*, 774 P.2d 1326, 1332 (Alaska 1989) (recognizing that notions of due process and fundamental fairness require that a defendant in an administrative hearing on driver's license revocation be permitted to cross-examine witnesses); *Jefferson v. Metro. Mortg. & Sec. Co. of Alaska, Inc.*, 503 P.2d 1396, 1398 (Alaska 1972) ("It is a fundamental precept of common law that before testimony may sustain a cause of action it must be subject to cross-examination. The right of trial necessarily confers the right to confront and cross-examine adverse witnesses."); *see also Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."); *McDaniels v. State*, 451 P.3d 403, 405 (Alaska App. 2019) (recognizing a due process right to confront and cross-examine adverse witnesses in a probation revocation proceeding absent good cause to deny confrontation).

[24] Alaska Court System publications also advise minor offense defendants that they have a number of procedural rights, including the right to question witnesses who appear at trial. *See* Alaska Court System, TR-210, *Minor Offense: Legal Rights and Plea Options* (Mar. 2019), https://public.courts.alaska.gov/web/forms/docs/tr-210.pdf (last visited June 30, 2025); *see also* Alaska Court System, PUB-19, *Minor Offense Procedures: Answers to Some Common Questions* 1 (Aug. 2018), https://public.courts.alaska.gov/web/forms/docs/pub-19.pdf (last visited June 30, 2025).

question after Wood's and Bellmore's testimony, and the record suggests that the court's efforts to expedite the hearing may have inadvertently precluded Lorenz from questioning the CBJ's other witnesses. On remand, Lorenz should be given an opportunity to notify the court whether she would like these witnesses recalled so that she may question them.[25]

### *Lorenz's discovery claim*

Lorenz argues that the district court improperly denied her motion to compel discovery. Lorenz maintains that she was not provided with all relevant discovery — specifically, emails, bark logs, and recordings of phone calls. In response to Lorenz's motion to compel, the CBJ stated that "[a]ll Animal Control reports and Bark Logs relevant to these cases were sent by email to Ms. Lorenz on November 9[, 2023]." The court did not rule on Lorenz's motion before trial.

At trial, Lorenz renewed her request that the court compel discovery, and the CBJ again represented that it had provided all the discovery to Lorenz. Officer Wood explained that the complaints and bark log were submitted to the CBJ through email and that she had provided Lorenz with those materials. Based on Officer Wood's representation, the court denied Lorenz's motion to compel discovery.

It appears from the record that Lorenz received copies or summaries of the communications Officer Wood had with the complaining witnesses. (As we noted earlier, Officer Wood maintained an activity card, which included copies or summaries of emails sent to Wood and summaries of Wood's phone calls.) It is not clear whether Lorenz received any "bark logs" — the logs of the dog barking that the neighbors kept

---

[25] Lorenz also argues that the court violated her right to due process by failing to afford her an opportunity to present a closing argument. We need not address this issue since we are remanding Lorenz's case to the district court for further trial proceedings, including the potential admission of additional evidence.

themselves. Lorenz maintains that she did not. The bark log was not formally introduced or admitted as evidence at trial, and it is not included in the record transmitted on appeal.

In its written order, however, the district court noted that it found the CBJ's "'bark log' evidence particularly helpful" in reaching its decision. But the exhibit lists do not include the bark log or show that it was admitted at trial. We are therefore uncertain whether the court was relying on the witnesses' testimony about the barking or on other documentary evidence that was not admitted at trial.

On remand, the court should ensure that the CBJ provides Lorenz with all documents related to the allegations contained in the citations — including the bark log, emails, and recorded phone conversations.[26] The court should also ensure that, if any of these items are admitted into evidence, they are formally introduced as exhibits or placed on the record.

*Lorenz's claim that the CBJ barking ordinance is unconstitutionally vague*

Lorenz argues that the CBJ nuisance barking ordinance is unconstitutionally vague. This ordinance, CBJ 08.45.010(a)(1), provides that the "keeper of an animal shall . . . [p]revent the animal from disturbing a neighborhood or any number of persons by frequent or prolonged noise, barking, howling or other noises."[27]

An ordinance may be unconstitutionally vague if it fails to provide fair notice of the conduct it prohibits or if it invites arbitrary or selective enforcement.[28]

---

[26] Alaska R. Crim. P. 16(b)(1)(A)(i).

[27] CBJ 08.45.010(a)(1).

[28] *See Oyoghok v. Municipality of Anchorage*, 641 P.2d 1267, 1269-70 (Alaska App. 1982); *Stevens v. Matanuska-Susitna Borough*, 146 P.3d 3, 9-11 (Alaska App. 2006) (noting that potential for arbitrary enforcement is grounds to invalidate a statute only if "there is evidence of a history of arbitrary or capricious enforcement or the statute is '"so conflicting and confused" that arbitrary enforcement is inevitable'" (quoting *Lazy*

Lorenz argues that the CBJ nuisance barking ordinance is unconstitutionally vague on both grounds. We review the constitutionality of the ordinance *de novo*.[29]

Lorenz's claim is governed by our decision in *Stevens v. Matanuska-Susitna Borough*.[30] In *Stevens*, we addressed a vagueness challenge to a noise ordinance that prohibited "amplified noise or vibration during certain hours of the day and night that c[ould] be plainly heard or felt on neighboring property such that it disturb[ed] a person of normal sensibilities."[31] The defendant, who was convicted of violating the ordinance, argued that it failed to give constitutionally adequate notice of the conduct prohibited and that it would lead to arbitrary enforcement.[32]

In rejecting Stevens's claims, we surveyed other jurisdictions and noted that "[n]oise ordinances that rely on a purely subjective standard to determine what volume of noise is annoying or disturbing have generally not passed constitutional muster."[33] In contrast, noise ordinances that incorporated a reasonable person standard, either explicitly or implicitly, have been upheld.[34]

---

*Mountain Land Club v. Matanuska-Susitna Borough Bd. of Adjustment & Appeals*, 904 P.2d 373, 384 (Alaska 1995))).

[29] *Alaska Trappers Ass'n, Inc. v. City of Valdez*, 548 P.3d 332, 336 (Alaska 2024).

[30] *Stevens*, 146 P.3d 3.

[31] *Id.* at 6 (paraphrasing the ordinance at issue).

[32] *Id.* at 9.

[33] *Id.* at 9-10 (first citing *Easy Way of Lee Cnty., Inc. v. Lee County*, 674 So. 2d 863 (Fla. Dist. App. 1996); then citing *Fratiello v. Mancuso*, 653 F. Supp. 775 (D.R.I. 1987); and then citing *Lutz v. City of Indianapolis*, 820 N.E.2d 766 (Ind. App. 2005)).

[34] *Id.* at 10-11 (first citing *City of Madison v. Baumann*, 470 N.W.2d 296 (Wis. 1991); then citing *State v. Garren*, 451 S.E.2d 315 (N.C. App. 1994); and then citing *City of Beaufort v. Baker*, 432 S.E.2d 470 (S.C. 1993)).

The ordinance at issue in *Stevens* applied to noise that was "plainly audible" across a property boundary for a certain amount of time at certain hours so as to disturb "a reasonable person of normal sensitivities," or was a physical vibration from amplified sound that was perceptible beyond a real property boundary to a "normal person."[35] Because the ordinance established sufficiently objective standards for noise disturbance, we concluded that the ordinance was not impermissibly vague.[36]

Here, the CBJ ordinance does not define when a noise is "disturbing [to] a neighborhood or any number of persons" or how "frequent or prolonged" a noise must be to violate the ordinance.[37] Under the doctrine of constitutional avoidance, courts should, if possible, presume that a duly enacted municipal ordinance is constitutional and construe the ordinance to avoid a finding of unconstitutionality.[38]

The CBJ contends, and we agree, that the CBJ's nuisance barking ordinance must be construed as requiring that the keeper of an animal prevent the animal from disturbing a *reasonable* neighbor or other *reasonable* person by frequent or prolonged noise, barking, howling, or other noises.[39] Construed in this manner, the ordinance provides sufficient guidance to both animal owners and enforcement officials as to the scope of its prohibition.

---

[35] *Id.* at 8.

[36] *Id.* at 11.

[37] CBJ 08.45.010(a)(1).

[38] *Haggblom v. City of Dillingham*, 191 P.3d 991, 997 (Alaska 2008) (stating that "even an ordinance that fails to give adequate notice of every type of prohibited conduct 'may still be sustained (1) if the offense charged falls squarely within its prohibitions and (2) if a construction may be placed upon the [ordinance] so that its reach may be reasonably understood in the future'" (alteration in original) (quoting *Summers v. Municipality of Anchorage*, 589 P.2d 863, 867 (Alaska 1979))).

[39] *See Stevens*, 146 P.3d at 9-11; *see also Baker*, 432 S.E.2d at 474 (construing a noise ordinance to contain an implied reasonable person standard).

As the CBJ acknowledges, however, the district court did not explain whether it used a subjective or objective standard in determining that Lorenz had violated the ordinance. In its written order, the court explained only that the "[CBJ] provided credible testimony and other evidence that at times [Lorenz's] dogs disturbed the neighborhood by prolonged barking."[40]

Accordingly, after addressing the issues we have identified in this opinion and completing the trial, the court should reconsider whether the evidence supports a conviction under the objective construction of the CBJ's nuisance barking ordinance set out here.[41]

*Conclusion*

For the reasons discussed in this opinion, we VACATE Lorenz's minor offense convictions and REMAND this case to the district court for further proceedings consistent with this opinion. In its discretion, the court may reopen the prior proceedings or hold a new trial.[42]

---

[40] In particular, the court found as follows:

> Based on the evidence presented, the court finds beyond a reasonable doubt that defendant violated CBJ 08.45.010(a)(1). Although defendant and her witness credibly testified to specific times when her dogs were not barking, to times her dogs were provoked, and to other dogs in the neighborhood also barking, the City provided credible testimony and other evidence that at times Defendant's dogs disturbed the neighborhood by prolonged barking.

[41] *See Colgan v. State*, 711 P.2d 533, 536 (Alaska App. 1985) (remanding for reconsideration of verdicts under clarified legal standard following a bench trial); *Lee v. Municipality of Anchorage*, 70 P.3d 1110, 1113 (Alaska App. 2003) (same).

[42] *See, e.g., Sykes v. Melba Creek Mining, Inc.*, 952 P.2d 1164, 1171 (Alaska 1998) ("Because the case was tried to the court without a jury, . . . a new trial will not be necessary. Instead, the trial court may reconsider its original decision after receiving supplemental testimony from [the erroneously precluded witnesses] and from any additional witnesses

[the other party] chooses to present in response to the new evidence."); *Wasserman v. Bartholomew*, 923 P.2d 806, 814-15 (Alaska 1996) ("Although it was error to exclude the testimony [in a civil bench trial] . . . , it does not necessarily follow that a new trial must be granted. The determination of the context in which the improperly excluded evidence should be heard will be left, in the first instance, to the trial court."); *Morgan v. State*, 54 P.3d 332, 340 (Alaska App. 2002) (directing judge who oversaw bench trial to hold a hearing on defendant's claim of a victim's prior false allegations of sexual assault and, if defendant carried his burden, to "re-determine [the defendant's] guilt in light of this evidence"). But note that if the original trial judge is not available, due process may require a new trial in front of a new factfinder. *See Morgan v. State*, 139 P.3d 1272, 1277-79 (Alaska App. 2006).

2812